MARY DORCHINCOZ v. COMMONWEALTH OF VIRGINIA.

June 19, 1950.

Record No. 3687.

Present, Hudgins, C. J., and Gregory, Eggleston, Spratley, Buchanan and Miller, JJ.

34

The opinion states the case.

*James G. Martin & Sons*, for the plaintiff in error.

*J. Lindsay Almond, Jr., Attorney General*, and *Frederick T. Gray, Assistant Attorney General*, for the Commonwealth.

HUDGINS, C. J., delivered the opinion of the court.

Mary Dorchincoz obtained this writ of error from a judgment which imposed upon her a fine of $100 and sentenced her to thirty days in jail for using the Atlantic Hotel in Norfolk, Virginia, for lewdness, assignation and prostitution.

The first question presented is whether the trial court committed error in refusing to sustain defendant's motion to dismiss the warrant. This motion was based on two separate and distinct grounds: (1) failure of the officer who made the arrest to leave a copy of the warrant with defendant, as required by section 19-72.1 of the 1950 Code, and (2) because the warrant did not state a criminal offense.

The purpose of requiring a copy of a criminal process to be left with a defendant is to inform him of the specific charge made against him so that he may intelligently prepare his defense. Defendant was arrested on the 3rd of September, 1949. She was convicted in the Police Court, perfected an appeal to the Corporation Court of the city of Norfolk, and was there tried on November 1, 1949.

At no stage of the proceedings did defendant require the Commonwealth to state the particulars of the charge pending against her. She does not claim that the failure of the officer to leave a copy of the warrant with her was prejudicial. While it is the duty of the arresting officer to comply with the statute, his failure to do so does not constitute reversible error unless it affirmatively appears that defendant was prejudiced thereby.

The specific charge stated in the warrant was that defendant "did unlawfully Vio. sec. 4548A State Code." There is no section 4548a in the official Virginia Code of 1919. This statute was published as Chapter 256, section 1, p. 436, of the Acts of 1918, which was adopted by the same General Assembly which adopted the Code of 1919, and hence was not codified. It was also published as section 4548a in Michie's 1942 Code of Virginia. While this is not an official Code because it has not been approved by the General Assembly, it is a legal publication, in general use, and recognized and accepted by the profession and the public as authentic. It contains all the statutes codified in the 1919 Code, and those amended and supplemented by the enactments of the General Assembly from 1918 to 1942,

inclusive. It is as familiar to lawyers and judges of this Commonwealth as a hammer is to a carpenter, or an ax to a woodman. This Code enables the profession to find the present statute law in one volume. If there were no such Codes as those published by Michie (1924, 1930, 1936, and 1942), in order to ascertain the present statute law, it would be necessary to examine the Code of 1919 and every act passed by the General Assembly since that date. The accuracy of the printed sections of Michie's Code of 1942 is not questioned. The Commission on Code Recodification, created by Chapter 400 of the Acts of 1946, cites Michie's 1942 Code at the end of each appropriate section in the Code of 1950. Members of this Court have found Michie's Code a great timesaver and rely upon it. It is cited more than three hundred times in the last bound volume of the Virginia Reports (189 Va. pp. xxxiv-xxxvii). The reference to section 4548a of the "State Code" is a specific reference to a specific statute published in each of Michie's Codes of Virginia.

The defendant was charged in the warrant with violating one statute, and one statute only. The statute was described with sufficient particularity for her to ascertain by proper inquiry the specific charge made against her. When the issue was raised, the trial court could, and perhaps should, have made an appropriate amendment to the warrant. If defendant desired any additional information as to the charge against her she had a right to ask for a bill of particulars, the object of which is to require the Commonwealth to state with greater particularity than is done in the warrant or indictment, the cause and nature of the accusation. *Pine* v. *Commonwealth*, 121 Va. 812, 93 S. E. 652.

The fact that the offense was charged in general terms does not appear to have been prejudicial to defendant; hence we find no reversible error in the refusal of the court to sustain defendant's motion to dismiss.

Defendant's second contention is that the evidence is insufficient to convict the accused of the crime charged.

The Commonwealth relies, in a large measure, upon the testimony of J. C. Cole and G. W. Davis, two police officers of the city of Norfolk, to sustain the verdict. On September 3, 1949, these officers, in plain clothes, registered as merchant seamen and nonresidents of Virginia, at the Atlantic Hotel. They were assigned a room on the second floor. About 11:00 p. m. a bell boy, an employee of the hotel, who, at the request of the officers had taken ice and ginger ale to their room, heard them discussing the question of "making dates with women in Norfolk." The bell boy interrupted them and said that if they wanted to make dates he could get two women for them. Whereupon the bell boy took the officers to separate rooms—numbers 413 and 415—on the fourth floor, and told them to wait a while. Approximately five minutes after the bell boy left, defendant entered Room No. 415, asigned to Cole, and sat down on the bed. She offered to have sexual intercourse with him for $20.00. He told her that the bell boy "quoted me a price of $10.00," to which she replied that her "usual" price was $20.00. Cole offered her $15.00, which she accepted. She took the money, left the room, but returned in a few minutes and took off all her clothes except her shoes. While she was in this nude condition, Cole showed her his official badge, and told her he was a police officer, and that she was under arrest. He then telephoned police headquarters.

Defendant stated that about six weeks prior to September 3, she and her husband registered at the hotel where she had remained until the time of her arrest. She and her husband occupied Room 416 across the hall from No. 415; that about 11:00 p. m. the officer knocked on the door of her room and asked her about two other women. She told him she never heard of one of them. He then invited her to his room for a drink. She accepted the invitation, though Cole was a stranger to her, walked across the hall,

entered the room and sat on the bed; that the officer used the telephone and asked for "Jimmie," the bell boy from whom he said he wanted to get a drink of whiskey. She denied disrobing and said that the question of sex was not discussed by them; that the officer, without any reason, pulled out his badge and told her she was under arrest. When she asked what he was arresting her for, he replied "Sit in the chair and don't say nothing." He offered her no money and none was found upon her person when she was taken to the police station.

Section 4548a of the 1942 Code (Michie), which is the same as 18-85 of the Code of 1950, and which defendant is charged with violating, provides: "It shall be unlawful for any person to frequent, reside in or visit, for immoral purposes, any house of ill-fame, brothel or bawdy house or any place within or without any building or structure within this State, which is used or is to be used for lewdness, assignation or prostitution."

Defendant contends that the statute was not intended to be substituted for section 4543 of the 1942 Code (Michie) (Code of 1950, section 18-82), which imposes a maximum penalty of $20 upon a person convicted of fornication or adultery; that one act, or attempted act, of illicit intercourse was not intended to be included in the statute; that section 4548a was designed to outlaw places of prostitution and to make it unlawful for persons to frequent such places; that to come within the contemplation of the statute, such places must be used, or intended to be used, as places of prostitution, and that the words "used," or "to be used" denote continuity, or permanence.

*Tenement House Dept.* v. *McDevitt*, 215 N. Y. 160, 109 N. E. 88, Ann. Cas. 1917A, 455, upon which defendant relies to support her contention, is not in point. That case involved a civil action brought against the owner of a tenement house to recover a penalty for the violation of the New York statute. The pertinent provision of the New York statute was that "no tenement house or any

part thereof, or the lot or premises thereof shall be used for the purpose of prostitution or assignation of any description." The conceded facts were that the building in question contained the homes of twenty-two families, and that two women, on different floors, on the same day, used their rooms for the purpose of prostitution. The women were arrested, found guilty and sentenced to imprisonment. The specific question presented was whether or not the owner was subject to the civil penalty of $50.00.

Judge Cardozo, in rendering the opinion, held that in order to make the owner liable "It must appear that the building has been 'used' for the purpose of prostitution, and this imports, not an isolated act of vice, but some measure, even though brief, of continuity and permanence." A number of cases from other jurisdictions were cited in which the words "used," and "keep," or "maintain," were held to import a certain degree of permanence, and that a single act would not constitute a violation of the different statutes when such words were used in part to define a nuisance.

The Virginia act is broad and comprehensive. The first section declares it to be unlawful for a person "to frequent, reside in or visit for immoral purposes any place" which is used or is to be used for that purpose. Section 2 declares it to be unlawful for a person to aid another in finding a place which is used for immoral purposes. Section 3 deals with a person who keeps or maintains a bawdy house. Section 4 deals with a person who permits illicit intercourse in a vehicle owned or operated by him.

The commission of one act of transporting, aiding or abetting another "with intent to enable such person to commit an act of prostitution" constitutes an offense under Sections 2 and 4 of the statute. This being true, it seems illogical to hold that the principal offender must commit more than one act to be guilty. This conclusion is strengthened by the fact that the quoted words "used," or "to be used," are found in the three sections—1, 2, and 4.

Deleting the words not pertinent to the issue under con-

sideration, the statute reads: "It shall be unlawful for any person * * * to reside in or visit * * * any place within or without any building * * * which is used or is to be used for lewdness, assignation or prostitution."

The proof is that (1) defendant had resided in the Atlantic Hotel for six weeks or more; (2) the bell boy knew she was a prostitute and acted for her in making engagements with men; (3) the bell boy promised that he would engage a woman for the officers; (4) defendant entered the officer's room within five minutes after this promise was made; (5) defendant expressed a willingness to have intercourse for pay; (6) she said her "usual" price was $20, but accepted $15 and disrobed.

The jury had a right to believe from this evidence that defendant resided in the Atlantic Hotel which she used for immoral purposes and that she visited the officer's room which she intended to use for illicit sexual intercourse.

Defendant's next assignment of error is based on the refusal of the trial court to instruct the jury on the question of entrapment.

The Chief of Police of Norfolk, in response to complaints that the Atlantic Hotel was being used as a place of prostitution, gave the officers $25 and ordered them to register as guests and ascertain whether the hotel was being so used. The officers did nothing to incite defendant to commit a crime. They simply indicated to the bell boy that they were willing to make an engagement with a woman for illicit sexual intercourse. They did not seek defendant. She voluntarily entered the room occupied by one of the officers and signified her willingness to commit the crime. The officers did not create in her mind the criminal intent. They simply gave her an opportunity to reveal her criminal purpose.

We said in *Guthrie* v. *Commonwealth*, 171 Va. 461, 198 S. E. 481, 119 A. L. R. 683, that the general rule is that officers of the law are not permitted to generate in the mind of a person, who is entirely innocent of any criminal

purpose, the original intent to commit criminal acts which that person would not have committed or contemplated, except for such inducements.

The facts do not bring the case within the influence of *Ossen* v. *Commonwealth*, 187 Va. 902, 48 S. E. (2d) 204, as a mere reading of the opinion in that case will reveal.

Defendant objected to certain instructions given, and to certain other instructions requested by her and refused. A discussion of the exceptions to the giving and refusing of the instructions is unnecessary as the ruling of the trial court thereon was in accord with the views herein expressed. The judgment of the trial court is

*Affirmed.*