554 A.2d 10

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Elmer WEISKERGER, Appellee.**

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Bob Allen CLAPPS, Appellee/Cross–Appellant.**

Supreme Court of Pennsylvania,
Eastern District.

Argued Dec. 11, 1987.

Decided Jan. 30, 1989.

LeRoy S. Zimmerman, Atty. Gen., Robert A. Graci, Chief Deputy Atty. Gen., Robert Keuch, Exec. Deputy Atty. Gen., for appellant.

Robert T. Panowicz, Wilkes Barre, for Weiskerger.

Charles P. Gelso, Wilkes Barre, for Clapps.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA and PAPADAKOS, JJ.

LARSEN,* Justice.

The issues presented for our consideration by these cases involve the defense of entrapment in a criminal prosecution. Specifically, we are called upon to determine 1) whether our Crimes Code embodies an objective or a subjective standard to guide a factfinder in the application of that defense; and 2) whether "defendants who did not testify at trial and who failed to admit either their participation in the crimes charged or in any of the elements of the crimes charged were nonetheless entitled to a jury instruction on entrapment." Brief for Appellant at 3.

Appellees, Elmer Weiskerger (Weiskerger) and Bob Allen Clapps (Clapps), were convicted by a jury in the Court of Common Pleas of Luzerne County on charges of Criminal Conspiracy (18 Pa.C.S. § 903), Bribery in Official and Political Matters (18 Pa.C.S. § 4701), and Violations of the Public Officials Ethics Act (65 P.S. §§ 403 and 409). Weiskerger

* This case was reassigned to this writer on September 21, 1988.

was sentenced to a term of three years' probation. Clapps was sentenced to imprisonment for a term of six to twenty-three and one-half months, and a consecutive probation of one year. A third co-defendant, Adam Hudock, was also convicted but died prior to sentencing.

The facts presented at trial are as follows. Walter Placek (Placek) was a member of the majority faction of the Wyoming Area School Board during the years preceding the general election of November, 1979. His wife, Barbara, a nurse, was employed at the county nursing home, Valley Crest, as a Coordinator of Program Development, an administrative position. Appointments to positions at the nursing home were under the control of the County Institution District, which is composed of the county commissioners. Appellee Weiskerger was treasurer of the local Republican party organization and he was politically allied with appellee Clapps who was vice-chairman of the local Democratic party organization and a member of the Exeter Borough Council. Four new school directors from the ticket endorsed by Clapps were elected in November, 1979. A change of county commissioners also occurred as a result of the election. Placek, a holdover board member, testified at trial that in January, 1980, he was approached by Weiskerger who wanted to know if Placek would be willing to join the four new directors in forming a new majority coalition which would give that group control of the nine-member Board of School Directors. Placek further testified that Weiskerger told him that Clapps might be able to guarantee Placek's wife's retention of her position at the Valley Crest nursing home by exercising influence with the new county commissioners because at that time positions at that facility were being abolished.

Two days after his meeting with Weiskerger, Placek reported the incident to the Federal Bureau of Investigation, whose agents equipped his phone with a tape recording device for the purpose of obtaining evidence to be used against appellees. That equipment, and a bodywire used by Placek to record a meeting with Clapps, produced the tapes

and transcripts which were used by the Commonwealth at trial. It was during the meeting with Clapps that Placek elicited Clapps' offer to intercede with the new county commissioners to preserve Barbara Placek's job in exchange for Placek's agreement to switch his allegiance to the Clapps faction on the school board. Placek did not vote with that faction as required by the terms of the offer. Later, his wife's position at the nursing home was abolished, and she was offered a position as a full-time nurse, a position for which she was qualified and which paid more than the position she had been filling. She declined, and, in April, 1981, she initiated a suit against appellees, Hudock and others in federal court for alleged civil rights violations.

When the within prosecution commenced, appellees pled not guilty. At trial they did not testify, nor did they offer any other evidence. Counsel for appellees developed facts through cross-examination which showed that Placek may have benefited at a time prior to the incidents at issue herein by a change of allegiance from a minority to a majority coalition on the board. It was shortly after that conversion that Placek's wife received her initial appointment at the nursing home. In addition, Placek himself had received a consultant's position and two part-time teaching assignments following this earlier switch. It was also made clear to the jury that Placek had served the FBI in an "enthusiastic manner", performing his role as an FBI "recruit" like a "zealot."[1] Counsel for appellees used these facts in an attempt to portray Placek's behavior as that of a corrupted individual whose interests would be served both politically and monetarily (through his wife's civil suit) by the convictions of appellees.

At the close of the evidence, the trial court charged the jury with a subjective test of entrapment, which test included references to the predisposition of the accused to commit the crimes charged. On appeal, Superior Court found this charge to be incorrect. That court vacated the judgments

---

1. *Commonwealth v. Clapps,* 355 Pa.Super. 80, 85, 86, 512 A.2d 1219, 1222 (1986). Superior Court noted, for example, that Placek made twenty attempts in five days to reach Clapps by telephone.

of sentence and granted a new trial. *Commonwealth v. Clapps,* 355 Pa.Super. 80, 512 A.2d 1219 (1986). The test for and the limits of the entrapment defense are matters of first impression for this Court, hence we granted leave to appeal to both the Commonwealth and Clapps. Clapps, as cross-appellant, asserts that he is entitled to discharge on the facts of this case as a matter of law.

In 1973, with minor modification, the General Assembly incorporated into our Crimes Code the American Law Institute formulation of the entrapment defense which is generally considered to be a statement of the objective test. Our entrapment statute provides:

(a) **General rule.**—A public law enforcement official or a person acting in cooperation with such an official perpetrates an entrapment if for the purpose of obtaining evidence of the commission of an offense, he induces or encourages another person to engage in conduct constituting such offense by either:

(1) making knowingly false representations designed to induce the belief that such conduct is not prohibited; or

(2) employing methods of persuasion or inducement which create a substantial risk that such an offense will be committed by persons other than those who are ready to commit it.

(b) **Burden of proof.**—Except as provided in subsection (c) of this section, a person prosecuted for an offense shall be acquitted if he proves by a preponderance of evidence that his conduct occurred in response to an entrapment.

(c) **Exception.**—The defense afforded by this section is unavailable when causing or threatening bodily injury is an element of the offense charged and the prosecution is based on conduct causing or threatening such injury to a person other than the person perpetrating the entrapment.

1972, Dec. 6, P.L. 1482, No. 334, § 1, effective June 6, 1973, 18 Pa.C.S. § 313.

In *Commonwealth v. Jones,* 242 Pa.Super. 303, 310–12, 363 A.2d 1281, 1284–85 (1976), Superior Court interpreted subsection (a) as follows:

Prior to the adoption of the 1972 Crimes Code, the Pennsylvania test for entrapment was "... whether the criminal design was created by the officer or whether the officer merely afforded an opportunity for the commission of a crime by the person already disposed to commit the crime ..." ... This test was derived from the majority opinions in *Sherman v. United States,* 356 U.S. 369, 78 S.Ct. 819, 2 L.Ed.2d 848 (1958), and *Sorrells v. United States,* 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413 (1932), which focused on the predisposition of the accused to commit the crime.... The present codification of entrapment finds its origin in Mr. Justice FRANKFURTER'S concurring opinion in *Sherman:* "This does not mean that the police may not act so as to detect those engaged in criminal conduct and ready and willing to commit further crimes should the occasion arise. Such indeed is their obligation. It does mean that in holding out inducements they should act in such a manner as is likely to induce to the commission of crime only these persons and not others who would normally avoid crime.... *This test shifts attention from the record and predisposition of the particular defendants to the conduct of the police and the likelihood, objectively considered, that it would entrap only those ready and willing to commit crime."* 356 U.S. at 383–384, 78 S.Ct. at 826. Thus, the test for entrapment has shifted in emphasis from a consideration of a particular defendant's readiness to commit crime, a subjective test, to an evaluation of the police conduct, an objective test, to determine whether there is a substantial risk that the offense will be committed by those innocently disposed. To determine whether an entrapment has been perpetrated in any particular case, therefore, the inquiry will focus on the conduct of the police and will not be concerned with the defendant's prior criminal activity or other indicia of a predisposition to commit crime.[7]

7. The objective test was recommended by the drafters of the Model Penal Code: "If the defense is available only to persons who

are 'innocent,' the full deterrent effect of the defense is undermined. Police conduct toward a particular defendant may be seriously objectionable even though he entertained a purpose to commit crime prior to any inducement by officials. Law enforcement officers may feel free to employ forbidden methods if the 'innocent' are freed but the habitual offenders, in whom the police have the greater interest, will nevertheless be punished.... *The very notion that certain police conduct may be improper in relation to the 'innocent' but acceptable when addressed to the 'guilty' seems incompatible with the ideal of equality before the law.... Further, to permit the use against a previously convicted person, of police measures not permitted toward the rest of society is to fix a permanent status of criminality against the hopes of enlightened penology."* Model Penal Code, Tentative Draft No. 9, Comment, § 2.10(1) at 20.

(some citations and footnotes omitted; emphasis added). See also Superior Court cases cited in that court's opinion in the instant case, *Commonwealth v. Clapps*, 355 Pa.Super. 80, 89, 512 A.2d 1219, 1224 (1986).

■ The Superior Court interpretation of section 313 is a legitimate legislative construction. The language of subsection (b) which places the burden of proof on a defendant to prove that his or her conduct "occurred in response to an entrapment" does not indicate a legislative enunciation of a subjective test requiring that a defendant prove that he or she was not predisposed to commit crime. The burden of proof language was merely intended to explicitly place the burden of proof on the defendant to establish the defense of entrapment *as defined in subsection (a)* with its language focusing objectively on the conduct of the police officers. In addition, the objective test represents the more enlightened approach and fosters the constitutional ideal of equal justice for all. Because the trial court herein gave a subjective entrapment test instruction to the jury, we must remand for a new trial so that the jury may make its determination with an objective entrapment test instruction.

■ As to the Commonwealth's position that appellees were not entitled to a jury instruction on entrapment (regardless of which standard was applicable—objective or subjective) because appellees did not testify at trial and failed to admit either their participation in the crimes charged or in any of the elements of the crimes charged, we disagree. A defendant is entitled to an instruction on any

recognized defense which has been requested, which has been made an issue in the case, and for which there exists evidence sufficient for a reasonable jury to find in his or her favor. *See Mathews v. United States,* 485 U.S. 58, 108 S.Ct. 883, 99 L.Ed.2d 54 (1988); *Commonwealth v. Carter,* 502 Pa. 433, 466 A.2d 1328 (1983); Pa.R.Crim.P. Rule 1119. Moreover, the entrapment statute conditions the availability of the defense *only* on a defendant's ability to establish its elements. 18 Pa.C.S. § 313(b). Although it may be difficult for a factfinder to believe that a person who has denied any criminal wrongdoing was entrapped into doing a criminal act, the law of this Commonwealth does not bar a jury instruction on entrapment on the basis of a jury's potential incredulity. We have reviewed the record in the case sub judice and we conclude that the evidence was sufficient to entitle appellees to a jury instruction on entrapment.

■ With respect to Clapps' assertion that the evidence demonstrated entrapment as a matter of law, in order to prevail on this claim, Clapps must show that the evidence of entrapment was so overwhelming that it could admit of no other conclusion. *Commonwealth v. Manley,* 252 Pa.Super. 77, 87, 380 A.2d 1290, 1294 (1977). The only evidence of entrapment was that which his attorney elicited on cross-examination. A review of that evidence establishes that it was not so overwhelming that no reasonable jury could have failed to find entrapment. Thus, the matter was a question of fact and not one of law; and was and is properly to be submitted to the factfinder.

Accordingly, the order of Superior Court is affirmed and the cases are remanded to the Court of Common Pleas of Luzerne County for a new trial.

McDERMOTT, J., files a concurring opinion in which NIX, C.J., joins.

McDERMOTT, Justice, concurring.

When one agrees to commit a crime, and does, he may argue that he was induced to do so by prosecuting authori-

ties. How one may proceed with such argument is the primary issue in this case.

Entrapment is the inducement of the commission of a criminal offense by one who would not have done so but for the deception, persuasion, or fraud of law enforcement officers or their agents. The defense was not known at common law, but in one form or another has been universally accepted by the states through judicial decision and legislation. It is an affirmative or positive defense, in the nature of confession and avoidance, which must be raised by the defendant. *See generally* 21 Am.Jur.2d *Criminal Law* § 202 (1981). As a rule it is not an available defense to an offense which involves violent conduct; one cannot be heard that he was weak enough to agree to another's injury. However, it exists for most other offenses. Its shortest definition of policy is that one ought not be induced or encouraged to do what he did not himself conceive or originate: there is enough crime without suggesting more to otherwise innocent persons merely to test their resistance to temptation.

The defense has been recognized and refined in many decisions by the federal judiciary. *See Mathews v. United States*, 485 U.S. 58, 108 S.Ct. 883, 99 L.Ed.2d 54 (1988); *Hampton v. United States*, 425 U.S. 484, 96 S.Ct. 1646, 48 L.Ed.2d 113 (1976); *United States v. Russell*, 411 U.S. 423, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973); *Sherman v. United States*, 356 U.S. 369, 78 S.Ct. 819, 2 L.Ed.2d 848 (1958); *Sorrells v. United States*, 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413 (1932). However, the defense is not of constitutional dimension. *Russell, supra*, 411 U.S. at 433, 93 S.Ct. at 1643. Accordingly, policy choices regarding the defense and the standards governing entrapment are left to state judiciaries and legislatures. *See State v. Little*, 121 N.H. 765, 435 A.2d 517 (1981).

The availability of the defense functions as a restraint on law enforcement officials in that it prohibits them from instigating the commission of criminal acts by otherwise innocent persons. *Russell, supra*, 411 U.S. at 423, 93 S.Ct.

at 1639. *See Commonwealth v. Jones,* 242 Pa.Super. 303, 363 A.2d 1281 (1976). As a result it places the conduct of the police at issue. Immoral and or illegal police conduct is that at which the defense is directed. Although artifice and deceit in some measure are recognized as the only practical means of apprehending criminals in certain circumstances, the distinction between conduct that constitutes entrapment and that which does not lies in whether the conduct in question merely provided an opportunity to the defendant, as opposed to providing inducement to commit the act.[1] *Russell, supra; Sherman, supra; Commonwealth v. Wasson,* 42 Pa.Super. 38, 57 (1910); 21 Am.Jur.2d, *supra,* § 202.

Jurisdictions are sharply divided over the elements that constitute the defense. The minority of jurisdictions, reasoning that the purpose of the defense of entrapment is to deter misconduct by the police, focus solely on whether the conduct of the law enforcement authorities was such as would have induced the commission of the crime by an ordinary law abiding citizen. *See Grossman v. State,* 457 P.2d 226 (Alaska 1969); *People v. Barraza,* 23 Cal.3d 675, 153 Cal.Rptr. 459, 591 P.2d 947 (1979); *State v. Anderson,* 59 Hawaii 479, 572 P.2d 159 (1977); *State v. Cooper,* 248 N.W.2d 908 (Iowa 1976); *People v. D'Angelo,* 401 Mich. 167, 257 N.W.2d 655 (1977); *State v. Pfister,* 264 N.W.2d 694 (N.D.1978); *State v. Wilkins,* 144 Vt. 22, 473 A.2d 295 (1983). The defendant's character, predisposition and his conceded factual guilt are considered irrelevant to this analysis, because as a matter of policy the law will not countenance the manufacture of crime by the police. This analysis has been referred to as the objective test. *See*

---

1. For example, persistent resorts to sympathy directed at a recovering drug addict, which overcame the defendant's initial refusal to procure drugs for a government informant was enough to make out entrapment. *Sherman v. United States,* 356 U.S. 369, 78 S.Ct. 819, 2 L.Ed.2d 848 (1958). On the other hand, where an agent provided the defendant with some of the raw material for the production of methamphetamine and eventually received some of the product, his conduct was not enough to constitute entrapment. *Russell,* 411 U.S. at 423, 93 S.Ct. at 1639.

*Sherman, supra,* 356 U.S. at 380, 78 S.Ct. at 824–25 (Frankfurter, J., concurring).

On the other hand, the majority of jurisdictions focus on two elements: whether egregious conduct of the police or their agent induced the criminal conduct; and whether the defendant was not otherwise predisposed to engage in that criminal conduct. *See Sorrells, supra; Sherman, supra; Russell, supra; Hampton, supra; Matthews, supra. See also State v. Mendoza,* 109 Ariz. 445, 511 P.2d 627 (1973); *Bailey v. People,* 630 P.2d 1062 (Colo.1981); *State v. Whitney,* 157 Conn. 133, 249 A.2d 238 (1968); *State v. Lopez,* 522 So.2d 537 (Fla.1988); *State v. Royal,* 247 Ga. 309, 275 S.E.2d 646, *on remand* 158 Ga.App. 405, 280 S.E.2d 427 (1981); *People v. Thornton,* 125 Ill.App.3d 316, 80 Ill.Dec. 703, 465 N.E.2d 1049 (1984); *Maynard v. State,* 174 Ind. App. 202, 367 N.E.2d 5 (1977); *State v. Batiste,* 363 So.2d 639 (La.1978); *Comm. v. Harvard,* 356 Mass. 452, 253 N.E.2d 346 (1969); *Simmons v. State,* 8 Md.App. 355, 259 A.2d 814 (1969); *State v. McCrillis,* 376 A.2d 95 (Me.1977); *State v. Ford,* 276 N.W.2d 178 (Minn.1979); *Ervin v. State,* 431 So.2d 130 (Miss.1983); *State v. Hartman,* 49 N.C.App. 83, 270 S.E.2d 609 (1980); *State v. Parks,* 212 Neb. 635, 324 N.W.2d 673 (1982); *Hill v. State,* 95 Nev. 327, 594 P.2d 699 (1979); *State v. Hogervorst,* 90 N.M. 580, 566 P.2d 828 (1977) *cert. den'd,* 90 N.M. 636, 567 P.2d 485 (1977); *People v. Calvano,* 30 N.Y.2d 199, 331 N.Y.S.2d 430, 282 N.E.2d 322 (1972); *Lee v. State,* 655 P.2d 1046 (Okla.1982); *State v. Murphy,* 21 Or.App. 630, 535 P.2d 779 (1975); *State v. Jones,* 416 A.2d 676 (R.I.1980); *State v. Nelsen,* 89 S.D. 1, 228 N.W.2d 143 (1975); *State v. Jones,* 598 S.W.2d 209 (Tenn.1980); *Altman v. State,* 666 S.W.2d 505 (Tex.1983); *State v. Curtis,* 542 P.2d 744 (Utah 1975); *Dorchincoz v. Commonwealth,* 191 Va. 33, 59 S.E.2d 863 (1950); *State v. Smith,* 93 Wash.2d 329, 610 P.2d 869 (1980), *cert. den'd,* 449 U.S. 873, 101 S.Ct. 213, 66 L.Ed.2d 93 (1980). *See also* 52 A.L.R. 4th 775. Since this test requires an inquiry into the predisposition of the defendant, it has been termed the subjective test.

In summary, the objective test focuses not on whether one is otherwise disposed to commit the offense, but on the conduct of the police authorities: specifically, whether the inducement offered was such that it would overpower the resistance of the hypothetical reasonable man. If found to be so, the person subjected to the inducement was entrapped, notwithstanding that he may have been more than willing to commit the crime. On the other hand the subjective test focuses on two elements: whether the inducement was an intolerable temptation, *and* whether it was practiced upon one not disposed to commit the proposed offense.

In 1959 the drafters of the Model Penal Code proposed two different formulations of the defense:

Section 2.10 Entrapment (1) A public law enforcement official or a person acting in cooperation with such an official perpetrates an entrapment if for the purpose of obtaining evidence of the commission of an offense he solicits, encourages, or otherwise induces another person to engage in conduct constituting such offense when he is not then otherwise disposed to do so.

Alternative formulation of Subsection (1)

(1) A public law enforcement official or a person acting in cooperation with such an official perpetrates an entrapment if for the purpose of obtaining evidence of the commission of an offense, he solicits or encourages another person to engage in conduct constituting such offense by either:

(a) making knowingly false representations designed to induce the belief that such conduct is not prohibited; or

(b) employing methods of persuasion or inducement which create a substantial risk that such an offense will be committed by persons other than those who are ready to commit it.

(2) Except as provided in paragraph (3) of this section, a person prosecuted for an offense shall be acquitted if he proves that his conduct occurred in response to an entrap-

ment [the issue of entrapment Shall be tried by the court in the absence of the jury].

(3) The defense afforded by this section is unavailable in a prosecution for a crime involving conduct causing or threatening bodily injury to a person other than the person perpetrating the entrapment.

MODEL PENAL CODE § 2.10 (Tent.Draft No. 9, 1959). The American Law Institute subsequently adopted and endorsed the alternate formulation, which is generally considered as a statement of the objective test. *See* MODEL PENAL CODE § 2.13 (Final Draft, 1962).

As noted by the majority, in 1973 this formulation, with minor modification, was incorporated into our Crimes Code by the General Assembly. The text of our entrapment defense provides:

(a) General Rule.—A public law enforcement official or a person acting in cooperation with such an official perpetrates an entrapment if for the purpose of obtaining evidence of the commission of an offense, he induces or encourages another person to engage in conduct constituting such offense by either:

(1) making knowingly false representations designed to induce the belief that such conduct is not prohibited; or

(2) employing methods of persuasion or inducement which create a substantial risk that such an offense will be committed by persons other than those who are ready to commit it.

(b) Burden of proof.—Except as provided in subsection (c) of this section, a person prosecuted for an offense shall be acquitted if he proves that his conduct occurred in response to an entrapment.

(c) Exception.—The defense afforded by this section is unavailable when causing or threatening bodily injury is an element of the offense charged and the prosecution is based on conduct causing or threatening such injury to a

person other than the person perpetrating the entrapment.

18 Pa.C.S. § 313.[2]

Arguably, the General Assembly's adoptions of the Model Penal Code's alternative formulation, which is generally considered to embody the objective test, would indicate that the legislature intended the objective standard to be employed in Pennsylvania. Appellees, Clapps and Weiskerger, have basically argued that the entrapment defense, as codified in section 313, constitutes an unambiguous statement of that standard. However, upon closer examination I believe a different criterion was intended.

Bearing in mind that the objective test looks only to the conduct of the police, while the subjective test looks to both the police conduct and the defendant's predisposition, one must examine the statutory language to see if one or two elements are stated.

Subsection (a) of section 313 provides in relevant part that a police officer "perpetrates an entrapment if for purposes of obtaining evidence of the commission of an offense, he induces or encourages another person to engage in conduct constituting such offense...." 18 Pa.C.S. § 313(a). Without question this section focuses solely on the actions of the police, and if this were the sole reference to establishing the defense I would agree that only one factor was relevant. However, subsection (b) of section 313, which defines the defendant's burden of proof, states:

"a person prosecuted for an offense shall be acquitted if he proves that *his conduct occurred in response* to an entrapment."

18 Pa.C.S. § 313(b) (emphasis added).

This language is contrary to a pure objective view in that it requires the defendant to show that *his* conduct was not self-motivated. This, in effect, requires the defendant to

2. Act of December 6, P.L. 1482, No. 334 § 1, effective June 6, 1973.

place his own conduct in issue. Therefore, according to the statute, a defendant must show that he was solicited or encouraged by the police *and* that but for the encouragement he would not have committed the offense with which he is charged. This is decidedly different from merely focusing on the actions of the police.

I fully recognize what is involved in an objective test. Also, I acknowledge that the commentators seem to agree that the Model Penal Code sought to announce an objective standard of entrapment. However, I do not believe that their formulation of an objective standard was without ambiguity. A true objective test would not have stated the burden of proof in terms of the subjective response of the individual who seeks to raise the defense. Therefore, because the statute is not explicit, a resort to statutory construction is mandated.[3]

The Statutory Construction Act of 1972[4] provides that the object of all interpretation and construction is to ascertain the intention of the General Assembly, and that statutes shall be construed if possible to give effect to all their provisions. 1 Pa.C.S. § 1921(a). In ascertaining legislative intent we must first look to the words of the statute. However, where, as here, the words do not explicitly convey the intent, we may consider other factors such as: the circumstances under which the statute was enacted; the object to be attained by its enactment; the former law upon the same subject; the consequences of a particular interpretation; and the contemporaneous legislative history. 1 Pa. C.S. § 1921(c). Finally, as an aid in construing statutes we are permitted to make certain presumptions, among them is

**3.** Interestingly, the majority does not seem convinced that the statute is unambiguous since their ultimate conclusion is that "[t]he Superior Court's unambiguous interpretation of section 313 is *a legitimate legislative construction.*" P. 14. This conclusion admits of the existence of another "legitimate legislative construction," and in such a case we are duty bound to ascertain the true legislative intent.

**4.** Statutory Construction Act of 1972. Act of December 6, 1972, P.L. 1339, No. 290, § 3.

the presumption that the General Assembly intended the entire statute to be effective and certain. 1 Pa.C.S. § 1922.

Turning now to section 313, it is important to bear in mind that it was adopted as part of the codification of the entire criminal law of Pennsylvania. One of the purposes of the legislature in adopting the Crimes Code was to make certain the definition of what conduct would constitute an offense. There is no statement in the Crimes Code that the legislature intended its adoption as a sweeping change of the definition of crimes and/or defenses. Rather, the overriding tone of the stated purposes of the legislature was to clarify the law, and to more clearly define the conduct which merits the imposition of punishment. See 18 Pa.C.S. § 104(3); (4); (5).

In the area of entrapment, prior to the adoption of the Crimes Code, the law of this Commonwealth utilized the subjective analysis of the defense. *See Commonwealth v. Klein,* 222 Pa.Super. 409, 294 A.2d 815 (1972); *Commonwealth v. Conway,* 196 Pa.Super. 97, 173 A.2d 776 (1961); *Commonwealth v. Werner,* 188 Pa.Super. 509, 149 A.2d 509 (1959); *Commonwealth v. Kutler,* 173 Pa.Super. 153, 96 A.2d 160 (1953); *Wasson, supra.* Prior to the adoption of the entrapment section here at issue it was reviewed by the Joint State Government Commission, which was an *ad hoc* body comprised of various members of both houses of the legislature for the purpose of making recommendations on the various sections of the proposed Code. The Commission's comments in proposing adoption of section 313 are illuminating:

This section is derived from Section 2.13 of the Model Penal Code and *is generally in accord with existing law.*

Existing law of entrapment is set forth in *Commonwealth v. Conway,* 196 Pa.Superior Ct. 97 [173 A.2d 776] (sic) (1961), where the court briefly discussed the Model Penal Code provision and concluded at page 103 [173 A.2d 776]:

"The defense of entrapment in Pennsylvania, as derived from our cases in the light of the other authori-

ties just mentioned, arises only when a law enforcement officer, by employing methods of persuasion or inducement which create a substantial risk that persons not otherwise ready to commit the criminal act will do so, actually induces such a person to commit the act."

The court went on to say that the defense is available where there is a defendant not disposed to commit the crime and "police conduct likely to entrap the innocently disposed." Under Pennsylvania law, the defense is submitted to the jury when the foregoing elements are present. *Commonwealth v. Conway, supra.* (sic)

*Joint State Government Commission Proposed Crimes Code for Pennsylvania,* § 213 Comment, at 51 (1967) (emphasis added).

Given the state of our law at the time of the adoption of the Crimes Code, and the Commission's evaluation of the content of MPC section 2.13, I believe that in adopting section 313 our General Assembly did *not* intend to change prior law, but merely intended a codification of that prior law.[5] Since that prior law unquestionably embodied the subjective test, and the jury instructions in this case were consistent with that prior law, the chosen instructions were technically correct.

Nevertheless, despite my disagreement with the majority analysis, I agree with the decision to grant a new trial. My

---

**5.** This view was apparently taken by the Superior Court in the early challenges to this statute. *See Commonwealth v. Proietto,* 241 Pa.Super. 385, 361 A.2d 712 (1976); *Commonwealth v. Mott,* 234 Pa.Super. 52, 334 A.2d 771 (1975). *See also* George, *Entrapment: The Myth of the Model Penal Code in Pennsylvania,* 86 Dick.L.R. 115 (1981).

Then, in 1976, the Superior Court augured a change in its view, and in the case of *Commonwealth v. Jones,* 242 Pa.Super. 303, 310–11, 363 A.2d 1281, 1284–85 (1976), the court began to embrace the objective analysis of the entrapment defense. With occasional exceptions, most notably *Commonwealth v. Clawson,* 250 Pa.Super. 422, 378 A.2d 1008 (1977), and *Commonwealth v. Lee,* 262 Pa.Super. 218, 396 A.2d 724 (1978), the Superior Court has applied the objective analysis since that time. *See e.g. Commonwealth v. McGuire,* 339 Pa.Super. 320, 488 A.2d 1144 (1985); *Commonwealth v. Thompson,* 335 Pa.Super. 332, 484 A.2d 159 (1984).

concurrence in the grant of a new trial is based on the fact that the trial judge's instructions, though correct in my view, were nonetheless contrary to the extant law of entrapment. *See Commonwealth v. Jones, supra; Commonwealth v. Taylor,* 299 Pa.Super. 113, 445 A.2d 174 (1982); *Commonwealth v. Ferguson,* 289 Pa.Super. 163, 432 A.2d 1103 (1981); *Commonwealth v. Danko,* 281 Pa.Super. 97, 421 A.2d 1165 (1980); *Commonwealth v. Stokes,* 264 Pa.Super. 515, 400 A.2d 204 (1979); *Commonwealth v. Manley,* 252 Pa.Super. 77, 380 A.2d 1290 (1977); *Commonwealth v. Loccisano,* 243 Pa.Super. 522, 532–3, n. 8, 366 A.2d 276, 281 n. 8 (1976).

In our hierarchical scheme of courts, the courts of common pleas are bound by the Superior Court's interpretation of the law when there is no Supreme Court statement on the issue. Assuming the existence of relevant appellate authority the courts of common pleas are not free to interpret the law independently. They must follow the law as announced by the appellate courts. Thus, the appellees and their attorneys were entitled to rely on the existing state of the law in formulating their defense.[6] However, since the trial judge misconceived the existing appellate authority the trial was marred, and a new trial is warranted.[7]

NIX, C.J., joins this concurring opinion.

6. I note that both appellees declined to take the witness stand, decisions entirely consistent with the rule of the cases cited: Since the objective inquiry was limited to the behavior of the police, appellee's predispositions were irrelevant. However, when the trial court, subsequent to the close of the parties' cases, gave an instruction requiring a factual determination on their predispositions their reliance on the law was ill-placed. Thus they were denied the opportunity to conform their defenses to the charges which the jury eventually received. Under the facts of this case that sequence arguably denied them the chance to enter evidence on the issue which was to prove determinative of their entrapment claims. They were, in effect, entrapped by the ambiguous state of the extant law of entrapment.

7. Regarding the additional issues which are present in this appeal, I agree with the majority's analysis.