J-S58036-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellant | |
| v. | |
| ORVAL WALTER WATSON, JR. | |
| Appellee | No. 507 WDA 2014 |

Appeal from the Order Dated March 11, 2014
In the Court of Common Pleas of Fayette County
Criminal Division at No(s): CP-26-CR-0001074-2013

BEFORE:  GANTMAN, P.J., BENDER, P.J.E., and PLATT, J.*

MEMORANDUM BY GANTMAN, P.J.:               **FILED OCTOBER 6, 2014**

Appellant, the Commonwealth of Pennsylvania, appeals from the order entered in the Fayette County Court of Common Pleas, granting the pretrial motion for writ of *habeas corpus* filed on behalf of Appellee, Orval Walter Watson, Jr.  We reverse and remand for further proceedings.

The relevant facts and procedural history of this appeal are as follows. In April 2013, Officer Mandy Mudrick, working undercover for the Southwest Regional Police Department, posted an advertisement in the "casual encounters" section of the website Craigslist.  The ad, entitled "sex and candy – w4m – 19 (belle vernon)," read verbatim as follows:

> hey guys.  i have tomorrow free and am available.  i love
> my beans, but dont have the cash for them and really dont
> like taking the chances buying them.  so if someone wants

_____

*Retired Senior Judge assigned to the Superior Court.

to hook me up with some percs or oxys i will gladly trade them a little affection if you know what i mean :)

im in belle vernon and i host

im real.  the pens won last night and iginla scored.

email me!

(Attached to Commonwealth's Answer to Request for Discovery, filed 5/21/14).  On April 22, 2013, Appellee responded to the ad stating, "Hi, I have murphine sulfite contin and 750 vicoden.  If interested let me know." *Id.*  The following email exchange then took place between Appellee and Officer Mudrick, who used the pseudonym "Amanda Woods":

| Officer Mudrick: | nice.  10 MS for sex? |
|---|---|
| Appellee: | Sure can you send pic I am sending one.  Dont want no popo lol |
| Appellee: | You have a number I can call or text can meet very soon |
| Officer Mudrick: | phones off – money problem but should be on tomorro |
| Appellee: | Hi are you still interested? |
| Officer Mudrick: | Ya you available tomorrow? 10 MS for whatever u want babe :) |
| Appellee: | Yes, before 2pm in the afternoon still need to know where to go or meet cutie |
| Officer Mudrick: | K we meet in belle Vernon hmm can't be b4 2… How about b4 2 tomorrow? |
| Appellee: | Yes I could, you still want to do this right |

- 2 -

| Officer Mudrick: | yeah i do.  we meet in belle vernon in the park across the street from my apt.…  we will meet, ill confirm you have the goods then we go back to my place and have a good time :) sound good?  any ideas what u want 2 do with me? |
| Appellee: | I have many ideas of what I would like to do with you lol ok I will chat with you tomorrow. |

*Id.*     Appellee and Officer Mudrick ultimately agreed to meet at approximately 3:00 p.m. on April 24, 2013, but Appellee failed to show. Appellee sent Officer Mudrick an apologetic email explaining he had been "side swiped" by another car on his way to the meeting location.  Appellee offered to "start over."  Four days later, on April 28, 2013, Officer Mudrick emailed Appellee, "Ok.  Can u hook me up tomorrow?"  Appellee responded, "Again sorry I do not try to jerk people around, What time are you around?" *Id.*  Appellee and Officer Mudrick arranged to meet at approximately 1:30 p.m. on April 29, 2013.  Appellee arrived at the agreed-upon location and asked Officer Mudrick if she was the person who posted the Craigslist ad. Officer Mudrick confirmed and asked Appellee if he brought anything. Appellee handed Officer Mudrick a baggie containing morphine pills, at which point Appellee was arrested.  The police recovered a second bag of morphine pills from Appellee's vehicle.

The Commonwealth charged Appellee with one (1) count each of delivery of a controlled substance, possession with intent to deliver

("PWID"), simple possession, and possession of drug paraphernalia.[1]  On November 25, 2013, Appellee filed a pretrial motion for writ of *habeas corpus*.  The trial court held a hearing on the motion on December 16, 2013.  On March 12, 2014, the court granted Appellee's motion for writ of *habeas corpus* and dismissed all charges against Appellee.  The Commonwealth filed a timely notice of appeal on March 31, 2014.  On the same date, the court ordered the Commonwealth to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).  The court issued an amended Rule 1925(b) order on April 7, 2014.  On May 13, 2013, the Commonwealth filed its Rule 1925(b) statement and a petition to accept the Rule 1925(b) statement as timely filed.  On May 15, 2014, the court granted the Commonwealth's petition and accepted the Rule 1925(b) statement as timely filed.[2]

_____

[1] 35 P.S. §§ 780-113(a)(30), (a)(16), (a)(32), respectively.

[2] This Court may address the merits of a criminal appeal where the appellant failed to file a timely Rule 1925(b) statement if the trial court had adequate opportunity and chose to prepare an opinion addressing the issues being raised on appeal.  ***See generally Commonwealth v. Burton***, 973 A.2d 428 (Pa.Super. 2008) (*en banc*) (addressing post-amendment Rule 1925 and ramifications regarding untimely Rule 1925(b) statement).  ***See also Commonwealth v. Grohowski***, 980 A.2d 113 (Pa.Super. 2009) (stating rule permitting late filing of Rule 1925(b) statement applies to Commonwealth as well as to represented criminal defendant).  Here, the trial court granted the Commonwealth's request to accept its Rule 1925(b) statement as timely filed.  Furthermore, the court issued an opinion accompanying its order, which it adopted as its Rule 1925(a) opinion.  This
*(Footnote Continued Next Page)*

- 4 -

On appeal, the Commonwealth raises a single issue for review:

> WHETHER THE COURT ERRED IN DISMISSING THE CASE DUE TO OUTRAGEOUS POLICE CONDUCT AND/OR ENTRAPMENT BECAUSE OF THE PLACING OF THE AD IN QUESTION.

(Commonwealth's Brief at 1).

The Commonwealth argues Officer Mudrick's actions did not serve to persuade or induce Appellee to commit the offenses in question for purposes of entrapment. The Commonwealth contends the interaction began with an advertisement on Craigslist that made it abundantly clear the person who posted the ad was seeking drugs. According to the Commonwealth, the police did not target Appellee; Appellee unilaterally responded to the Craigslist ad. Likewise, the Commonwealth avers Appellee made his own decision to arrange a meeting with Officer Mudrick and to deliver the pills. The Commonwealth stresses that Officer Mudrick had no preexisting relationship with Appellee, and the police did not aid Appellee's commission of the crime in any way. The Commonwealth concludes the court erred when it determined Appellee had established the defense of entrapment as a matter of law and dismissed the charges against him. We agree.

The Crimes Code defines the defense of entrapment in relevant part as follows:

_(Footnote Continued)_ ———————————

opinion addressed the Commonwealth's sole issue on appeal. Thus, our review is unimpeded.

- 5 -

**§ 313. Entrapment**

**(a) General Rule.—**A public law enforcement official or a person acting in cooperation with such an official perpetrates an entrapment if for the purpose of obtaining evidence of the commission of an offense, he induces or encourages another person to engage in conduct constituting such offense by either:

> (1) making knowingly false representations designed to induce the belief that such conduct is not prohibited; or

> (2) employing methods of persuasion or inducement which create a substantial risk that such an offense will be committed by persons other than those who are ready to commit it.

**(b) Burden of Proof.—**Except as provided in subsection (c) of this section, a person prosecuted for an offense shall be acquitted if he proves by a preponderance of the evidence that his conduct occurred in response to an entrapment.

18 Pa.C.S.A. § 313(a)-(b). With regard to this defense,

> Pennsylvania courts apply an "objective" test for entrapment, as set forth in ***Commonwealth v. Jones***, 363 A.2d 1281 (Pa.Super. 1976):

>> [T]he test for entrapment has shifted in emphasis from a consideration of a particular defendant's readiness to commit crime, a subjective test, to an evaluation of the police conduct, an objective test, to determine whether there is a substantial risk that the offense will be committed by those innocently disposed. To determine whether an entrapment has been perpetrated in any particular case, therefore, the inquiry will focus on the **conduct of the police** and will not be concerned with the defendant's prior criminal activity or other *indicia* of a predisposition to commit crime.

> ***Id.*** at 1285 (emphasis added). ***See also Commonwealth v. Weiskerger***, 520 Pa. 305, 311, 554

A.2d 10, 13 (1989) (holding conduct of police is chief inquiry in entrapment analysis). As this Court explained:

> [T]he objective approach conceives the entrapment defense as aimed at deterring police wrongdoing. The defense provides a sanction for overzealous and reprehensible police behavior comparable to the exclusionary rule. The focus of the defense is on what the police do and not on what kind of person the particular defendant is—whether he is innocent or predisposed to crime.

> *Commonwealth v. Lucci*, 662 A.2d 1, 3 (Pa.Super. 1995), *appeal denied*, 543 Pa. 710, 672 A.2d 305 (1995) (citation omitted). *Accord Commonwealth v. Borgella*, 531 Pa. 139, 611 A.2d 699 (1992); *Commonwealth v. Medley*, 725 A.2d 1225 (Pa.Super. 1999), *appeal denied*, 561 Pa. 672, 749 A.2d 468 (2000); *Commonwealth v. McGuire*, 488 A.2d 1144 (Pa.Super. 1985). "In their zeal to enforce the law, government agents may not originate a criminal design, implant in an innocent person's mind the disposition to commit a criminal act and then induce commission of the crime so that the government may prosecute." *Borgella, supra* at 144 (citing *Jacobson v. United States*, 503 U.S. 540, 112 S.Ct. 1535, 118 L.Ed.2d 174 (1992)). *See, e.g., Borgella, supra* at 143-44 (holding evidence supported entrapment instruction where paid police informant used false pretenses to secure defendant's confidence, encouraged defendant to buy drugs, and offered defendant lucrative job on condition that defendant provide drugs); *Commonwealth v. Wright*, 578 A.2d 513 (Pa.Super. 1990) (*en banc*), *appeal denied,* 526 Pa. 648, 585 A.2d 468 (1991) (holding entrapment established as matter of law where police helped informant cultivate false friendship with defendant in order for informant to persuade defendant to purchase and supply drugs); *Lucci, supra* at 7-8 (holding outrageous and egregious police conduct constituted entrapment as matter of law where confidential informant was defendant's very close friend, confidential informant knew defendant had just returned from drug rehabilitation, confidential informant appealed to bonds of friendship and sympathy engendered by his mother's alleged impending

death, and repeatedly approached defendant about selling drugs in exchange for "free high").

Where police "do no more than afford [the defendant] an opportunity" to commit an illegal act, their actions are not considered sufficiently outrageous police conduct to support an entrapment defense. ***Commonwealth v. Morrow***, 650 A.2d 907, 913 (Pa.Super. 1994), *appeal denied*, 540 Pa. 648, 659 A.2d 986 (1995). ***See also Commonwealth v. Zingarelli***, 839 A.2d 1064 (Pa.Super. 2003), *appeal denied*, 579 Pa. 692, 856 A.2d 834 (2004) (providing opportunity without attempting to overcome [defendant's] reason and good sense does not rise to level of outrageousness necessary to find entrapment as matter of law).

***Commonwealth v. Marion***, 981 A.2d 230, 238-39 (Pa.Super. 2009), *appeal denied*, 605 Pa. 697, 990 A.2d 729 (2010). ***See also Commonwealth v. Stokes***, 400 A.2d 204 (Pa.Super. 1979) (stating offer to purchase heroin alone did not rise to level of entrapment where undercover officer "did not importune appellant in any way").

Thus, the availability of the entrapment defense under the statute does not preclude the police from acting "so as to detect those engaging in criminal conduct and ready and willing to commit further crimes should the occasion arise. Such indeed is their obligation." ***Morrow, supra*** at 914.

Pennsylvania case law has consistently held:

[T]he determination of whether police conduct constitutes entrapment is for the jury, unless the evidence of police conduct clearly establishes entrapment as a matter of law…. Thus, after the defense of entrapment has been properly raised, the trial court should determine the question as a matter of law wherever there is no dispute as to the operative facts relating to the defense.

***Lucci, supra*** at 3 (quoting ***Commonwealth v.***

- 8 -

> ***Thompson***, 484 A.2d 159, 163-64 (Pa.Super. 1984)).
> ***See, e.g., Commonwealth v. Mance***, 619 A.2d 1378
> (Pa.Super. 1993), *aff'd*, 539 Pa. 282, 652 A.2d 299 (1995)
> (holding matter of entrapment properly submitted to jury
> where operative facts are disputed). Importantly, the
> court may also consider, based upon the operative facts,
> whether it can reject an entrapment defense as a matter of
> law. ***Morrow, supra*** at 914. Operative facts are:
>
> > [T]hose that are necessary for [a defendant] to
> > prove by a preponderance of the evidence that he
> > was entrapped. Under the objective test for
> > entrapment, these would be facts that go to the
> > course of conduct of a government officer or agent
> > that would fall below standards to which common
> > feelings respond, for the proper use of government
> > power.
>
> ***Lucci, supra*** at 4 (citation omitted).

***Marion, supra*** at 239.

Under certain circumstances, police conduct in a criminal investigation may be so egregious as to constitute a violation of due process. ***Mance, supra*** at 1381.

> Only in the rarest and most outrageous circumstances will
> government conduct in a criminal investigation be found to
> violate due process. Before the conduct of law
> enforcement officials or government agents will be found
> to have violated due process…it must be shown that police
> conduct was so grossly shocking and so outrageous as to
> violate the universal sense of justice. The establishment of
> a due process violation generally requires proof of
> government **overinvolvement** in the charged crime and
> proof of the defendant's mere passive connection to the
> government orchestrated and implemented criminal
> activity. Moreover, for due process to bar a conviction, the
> government's involvement in the commission of the crime
> must be *malum in se* or amount to engineering and
> direction of the criminal enterprise from beginning to end.

- 9 -

*Id.* (internal citations and quotation marks omitted) (emphasis in original).

Instantly, the operative facts are not in dispute. Officer Mudrick posted a generic advertisement on Craigslist in which she pretended to be a nineteen-year-old woman seeking drugs in exchange for "a little affection if you know what i mean." Appellee initiated contact with Officer Mudrick by replying to the ad. In his initial message, Appellee expressed interest and said he had MS Contin (morphine) and Vicodin pills. Officer Mudrick responded, "nice. 10 MS for sex?" Appellee immediately replied, "sure." He then sent another email stating, "You have a number I can call or text can meet very soon." After Officer Mudrick replied that her phone was off because of a "money problem," Appellee sent another message asking if she was still interested. The Craigslist ad merely afforded Appellee an opportunity to commit the offense of delivery of a controlled substance. *See Marion, supra*. The police did not target or have any prior contact with Appellee, and the ad was open to anyone who visited Craigslist. The ad indicated the poster was looking to trade sexual favors for drugs; it was not directed at Appellee and, absent more, did not constitute entrapment. *See Stokes, supra*.

Moreover, Officer Mudrick's specific request for ten MS Contin pills in exchange for sex does not change our conclusion. At that point, Appellee had already initiated contact with Officer Mudrick and asked if she was interested in the pills he possessed. Appellee immediately agreed to the

proposed exchange without further prompting and began to arrange a time and place to meet. Nothing in the email conversation between Officer Mudrick and Appellee indicates Officer Mudrick was overzealous or manipulative or that she attempted to overcome Appellee's will. ***See Zingarelli, supra***; ***Lucci, supra***. The initial plan to meet failed only because Appellee was involved in a car accident. **Appellee** then sent Officer Mudrick an email in which he apologized and indicated he was still interested in meeting up with her. Appellee had not changed his mind about participating in a sex-for-drugs exchange. Thus, Officer Mudrick's email a few days later proposing a new meeting time was not an attempt to lure Appellee back. The evidence of record shows the police conduct, viewed objectively, did nothing more than afford Appellee an opportunity to commit an illegal act by exchanging drugs for sex. Therefore, as a matter of law, the police actions were insufficient to support an entrapment defense. ***See Marion, supra***. Likewise, the government's involvement in Appellee's commission of the crime was not so outrageous as to constitute a violation of due process. ***See Mance, supra***. Accordingly, we reverse the order granting Appellee's pretrial motion for writ of *habeas corpus* and remand for further proceedings.

Order reversed; case remanded for further proceedings. Jurisdiction is relinquished.

Judge Platt joins this memorandum.

President Judge Emeritus Bender files a dissenting memorandum.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/6/2014