611 A.2d 699

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Frantz BORGELLA, Appellant.**

Supreme Court of Pennsylvania.

Submitted May 6, 1991.

Decided June 17, 1992.

140

Thomas A. Thornton, Frederick W. Ulrich, Asst. Public Defenders, for appellant.

Julia Feld, Kathy G. Wingert, Dep. Dist. Attys., for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA, PAPADAKOS and CAPPY, JJ.

## OPINION

ZAPPALA, Justice.

The issue presented for our consideration is whether the Superior Court erred in affirming the trial court's refusal to instruct the jury on the requested defense of entrapment. For the reasons that follow we now reverse the order of the Superior Court.

Appellant Frantz Borgella was convicted by a jury in the Court of Common Pleas of Dauphin County on two counts of unlawful delivery of a controlled substance.[1] Appellant was sentenced to a term of imprisonment of eleven and one half to twenty-three months on the first count and to a concurrent term of three to six months on the second count. Post-trial motions were filed, argued and denied.

---

1. Frantz Borgella is a Haitian immigrant who came to the United States in 1975. N.T. 5/31/89 p. 3. According to his uncontradicted trial testimony, Frantz Borgella has never been convicted of any crimes in his life prior to this trial. N.T. 6/21/88 pp. 62–63.

The facts presented at trial established that on February 8, 1987, Detective Pelino of the Derry Township Police Department received a telephone call from a reliable paid informant, Tim Updegraff, whose information over approximately five years had resulted in a number of arrests. As a result of the telephone conversation, a meeting was set up for 5:30 p.m. with the informant, the detective (posing as the informant's boss and cousin), and Appellant, at a K–Mart parking lot in Hummelstown. At that meeting, the detective negotiated an agreement for purchase of drugs and paid Appellant $70.00.

Later that evening, the detective received another call from the informant and a second meeting was arranged for 8:30 p.m. in a barbershop parking lot at the intersection of Route 743 and Gates Road. At the meeting, Appellant handed the detective two packages of substances which later were determined to be marijuana and cocaine. The detective then explored the possibility of future drug transactions with Appellant who volunteered his phone number.

The trial court refused to instruct the jury on the defense of entrapment because Appellant's denial of the crime was logically inconsistent with and factually repugnant to the defense of entrapment. The Superior Court affirmed the conviction on a different basis, concluding that there was insufficient evidence of entrapment for the jury to find in Appellant's favor. 399 Pa.Super. 645, 573 A.2d 1156.

In *Commonwealth v. Weiskerger*, 520 Pa. 305, 554 A.2d 10 (1989) we addressed the issue of whether defendants who did not testify at trial and who failed to admit their participation either in the crimes charged or in any of the elements of the crimes charged were nonetheless entitled to a jury instruction on entrapment. Weiskerger involved a school board member who was recruited to join a coalition of newly elected board members in exchange for the promise to intercede with the county commissioners to preserve the board members's wife's administrative position at the county nursing home. In concluding that the defendants were entitled to a jury instruction on entrapment we stated:

A defendant is entitled to an instruction on any recognized defense which has been requested, which has been made an issue in the case, and for which there exists evidence sufficient for a reasonable jury to find in his or her favor. *See Mathews v. United States,* 485 U.S. 58, 108 S.Ct. 883, 99 L.Ed.2d 54 (1988); *Commonwealth v. Carter,* 502 Pa. 433, 466 A.2d 1328 (1983); Pa.R.Crim.P. Rule 1119. Moreover the entrapment statute conditions the availability of the defense only on a defendant's ability to establish its elements. 18 Pa.C.S. § 313(b). Although it may be difficult for a fact finder to believe that a person who has denied any criminal wrongdoing was entrapped into doing a criminal act, the law of this Commonwealth does not bar a jury instruction on entrapment on the basis of a jury's potential incredulity.

520 Pa. at 312–313, 554 A.2d at 14 (1989).

In relevant part, our entrapment statute provides:

**Entrapment**

(a) **General rule.**—A public law enforcement official or a person acting in cooperation with such an official perpetrates an entrapment if for the purpose of obtaining evidence of the commission of an offense, he induces or encourages another person to engage in conduct constituting such offense by either:

(1) making knowingly false representations designed to induce the belief that such conduct is not prohibited; or

(2) employing methods of persuasion or inducement which create a substantial risk that such an offense will be committed by persons other than those who are ready to commit it.

(b) **Burden of proof.**—Except as provided in subsection (c) of this section, a person prosecuted for an offense shall be acquitted if he proves by a preponderance of evidence that his conduct occurred in response to an entrapment.

18 Pa.C.S. § 313.

In *Commonwealth v. Weiskerger,* we held that the entrapment statute embodied an objective standard to guide a fact finder in the application of that defense. Specifically, we

found that "[t]he burden of proof language was merely intended to explicitly place the burden of proof on the defendant to establish the defense of entrapment as defined in subsection (a) with its language *focusing objectively on the conduct of the police officers*". 520 Pa. at 312, 554 A.2d at 14 (emphasis added).

Appellant argues that his own trial testimony on the events preceding his involvement with Detective Pelino, together with his version of his conversation with Detective Pelino, establish sufficient evidence to submit the question of whether he was entrapped to the jury.

Appellant testified that in November, 1986, three months prior to the incident in question, Timothy Updegraff appeared as a stranger at Appellant's home in Lancaster and asked to use his bathroom. After using the bathroom, Updegraff asked Appellant if he could get Updegraff some drugs. Appellant refused. Nevertheless, Updegraff persisted and subsequently returned to Appellant's house several times seeking drugs. Updegraff's ploy was to play on Appellant's sympathy by explaining that he was addicted to drugs because of domestic problems and that he could not buy drugs in appellant's neighborhood because each time he tried he was "ripped off" and beaten. Appellant, however, continued to refuse to buy any drugs for Updegraff.

Appellant also testified that Updegraff ingratiated himself to Appellant, and the two began to spend time together socially. During this time, Appellant, although employed, became involved in construction, Updegraff's ostensible line of work, based on Appellant's perception, created by Updegraff, of Updegraff's enviable income. Subsequently, Updegraff offered to introduce Appellant to his boss and Appellant eagerly accepted the opportunity. On February 8, 1987, Updegraff drove Appellant from his home to meet his boss (Detective Pelino) in a parking lot in Hummelstown to discuss a potential job in construction.

Applying an objective standard to the conduct of the police, we find that there was sufficient evidence to entitle Appellant to a jury instruction on entrapment. Appellant, a law abiding

citizen of this Commonwealth, was contacted by a paid police informant who through numerous false pretenses secured Appellant's confidence and friendship. Furthermore, according to Appellant's testimony, the police informant during this time repeatedly encouraged Appellant to buy drugs for him. Finally, the police informant offered Appellant a more lucrative job opportunity by introducing him to his "boss", Detective Pelino in Hummelstown. It could reasonably be inferred that the sine qua non for this job opportunity was the agreement to obtain drugs for the "boss".

We reach this conclusion based on a strong belief that [i]n their zeal to enforce the law, government agents may not originate a criminal design, implant in an innocent person's mind the disposition to commit a criminal act and then induce commission of the crime so that the government may prosecute. *Jacobson v. United States*, —— U.S. ——, 112 S.Ct. 1535, 118 L.Ed.2d 147 (1992) (Where the defense of entrapment was raised in a criminal prosecution, the U.S. Supreme Court held that the prosecution failed as a matter of law to adduce evidence to support the jury verdict that Jacobson was predisposed independent of the government's acts and beyond a reasonable doubt to violate the Child Protection Act of 1984 by receiving child pornography through the mails.)

The order of the Superior Court affirming the judgment of sentence of the Court of Common Pleas of Dauphin County is reversed and the case is remanded for a new trial.

Jurisdiction relinquished.

PAPADAKOS, J., files a dissenting opinion in which McDERMOTT, J., joins.

PAPADAKOS, Justice, dissenting.

Appellant was sentenced to prison for a term of eleven and one-half months to twenty-three months on a conviction for two counts of delivering cocaine and marijuana to an undercover police officer. The issue for review is whether the trial court erred in refusing to instruct the jury on the defense of

entrapment. For the following reasons, I would affirm the lower court.

The facts are that Detective Domenic Pelino was approached by a reliable paid police informer, Timothy Updegraff, with an offer to arrange a meeting between Pelino and Appellant Frantz Borgella for the purpose of drug dealing. Two meetings took place in February, 1987, at which time Borgella sold drugs to the undercover officer, followed by arrest and conviction. Appellant contends that he was entrapped by Updegraff into proceeding with the criminal acts. Consideration of his claim, therefore, turns on the facts of the relationship between Updegraff as police agent and Borgella.

That relationship began in November, 1986, when Updegraff appeared at Appellant's home asking to use toilet facilities. Over the following weeks and months, Updegraff often visited Borgella. An apparent friendship ensued to the point where the informer repeatedly requested Borgella's help in securing drugs for himself. Borgella refused at all times inspite of a growing relationship as drinking partners and forays for women. In this particular time frame, Updegraff purchased drugs for himself *without* the aid of Borgella.

A critical point, for purposes of this review, is that Updegraff represented himself as employed with a good salary and, on that basis, offered to introduce Borgella to his "employer." For his part, Borgella had articulated to Updegraff his own discontent with his present job. The three ultimately met in a parking lot; the "employer," of course, was undercover Officer Pelino and there Borgella sold drugs to Pelino for cash. Detective Pelino also got Borgella's telephone number with a promise to call in the event of an employment opportunity. Appellant, nevertheless, was arrested on December 7, 1987.

At trial, the defendant unsuccessfully requested an instruction to the jury on the legal defense of entrapment. The trial court, relying on *Commonwealth v. McGuire*, 339 Pa.Superior Ct. 320, 334, 488 A.2d 1144, 1151 (1985), held that the defense was available only if a defendant first admitted some element of the crime. Since Borgella refused to concede that he had

participated in the crime, he was not entitled to the instruction. (Majority opinion, p. 142).

In 1989, we issued a definitive ruling on our entrapment statute in *Commonwealth v. Weiskerger*, 520 Pa. 305, 554 A.2d 10 (1989).[1] I conclude that the present case falls under Section (a)(2) which instructs us to determine whether the methods employed by the police would have led "other" persons down the road to legal perdition.[2] Under *Weiskerger*, this `evaluation would constitute an objective standard by which an entrapment defense will lie if the conduct of the police could overwhelm even innocent, unwilling minds or those citizens who normally avoid criminal acts.

1. *Weiskerger* interpreted our entrapment statute, 18 Pa.C.S. § 313:

   (a) **General rule.**—A public law enforcement official or a person acting in cooperation with such an official perpetrates an entrapment if for the purpose of obtaining evidence of the commission of an offense, he induces or encourages another person to engage in conduct constituting such offense by either:
   (1) making knowingly false representations designed to induce the belief that such conduct is not prohibited; or
   (2) employing methods of persuasion or inducement which create a substantial risk that such an offense will be committed by persons other than those who are ready to commit it.
   (b) **Burden of proof.**—Except as provided in subsection (c) of this section, a person prosecuted for an offense shall be acquitted if he proves by a preponderance of evidence that his conduct occurred in response to an entrapment.
   (c) **Exception.**—The defense afforded by this section is unavailable when causing or threatening bodily injury is an element of the offense charged and the prosecution is based on conduct causing or threatening such injury to a person other than the person perpetrating the entrapment.

2. While this Court has not defined the term "other," the Superior Court has interpreted it to mean "an innocent person." *Commonwealth v. Schauffler*, 397 Pa.Superior Ct. 310, 580 A.2d 314 (1990), appeal denied, 525 Pa. 663, 583 A.2d 793 (1990); *Commonwealth v. Wright*, 396 Pa.Superior Ct. 276, 578 A.2d 513 (1990) ("an innocent man"); *Commonwealth v. Wilson*, 381 Pa.Superior Ct. 253, 553 A.2d 452 (1989). This rendition follows earlier identical meanings; *Commonwealth v. Stokes*, 264 Pa.Superior Ct. 515, 400 A.2d 204 (1979); *Commonwealth v. Conway*, 196 Pa.Superior Ct. 97, 173 A.2d 776 (1961). *Conways's* definition was employed by Mr. Justice McDermott in his Concurring Opinion in *Weiskerger* (joined by Mr. Chief Justice Nix) as part of an analysis of legislative intent and the Model Penal Code. I agree with the conclusions and point out that the majority opinion in

I reject the argument that police conduct in the case under review either provoked, or risked provoking, criminal behavior by innocent citizens of the Commonwealth. Police behavior would not have induced an innocent person to sell drugs as Appellant Borgella did once given the opportunity. The sale of drugs is a peculiarly heinous offense in today's world. The Appellant anticipated gaining a benefit through an act which, objectively speaking, ordinary citizens would avoid. As a matter of law, therefore, the evidence was such that the actor was not entitled to a jury instruction on the defense of entrapment.

I would affirm the judgment below.

McDERMOTT, J., joins this dissenting opinion.

*Weiskerger* adopted the federal law's language of "others who would normally avoid crime." 520 Pa. at 311, 554 A.2d at 13.