J-S08041-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| ANDRE IKARD | : | |
| | : | No. 1425 WDA 2017 |
| Appellant | | |

Appeal from the Judgment of Sentence August 30, 2017
In the Court of Common Pleas of Beaver County Criminal Division at
No(s):  CP-04-CR-0002086-2016

BEFORE:   LAZARUS, J., KUNSELMAN, J., and STEVENS*, P.J.E.

MEMORANDUM BY STEVENS, P.J.E.:                    **FILED MARCH 16, 2018**

Appellant, Andre Ikard, appeals from the judgment of sentence entered in the Court of Common Pleas of Beaver County after a jury convicted him of delivery of a noncontrolled substance in contravention of 35 Pa.C.S. § 780-113(a)(35)(ii).  We affirm.

The trial court aptly sets forth the procedural and factual histories of the case as follows:

> On October 5, 2017, a Criminal Complaint was filed in this case charging Defendant [hereinafter "Appellant"] with unlawful delivery of crack cocaine, possession with intent to deliver crack cocaine, and criminal use of a communications facility.  The case was scheduled for a non-jury trial on March 31, 2017.  On March 31, 2017, Appellant informed the court that he now wanted a jury trial, and that he no longer wanted the private attorney he had hired.  The case was scheduled for a jury trial and Appellant's attorney withdrew from representing him.

_____

*   Former Justice specially assigned to the Superior Court.

Appellant was then represented by the Public Defender's Office. *Voir dire* began and a jury was selected on July 10, 2017. Trial commenced on July 11, 2017. By agreement of the parties, the charges at trial, contained in the Amended Information filed on April 19, 2017, were limited to Count 1, for criminal use of a communications facility, Count 3 for unlawful delivery of crack cocaine, and Count 4 for distribution or sale of a noncontrolled substance.[1]

---

[1] Count 4 was amended from unlawful delivery of crack cocaine to distribution or sale of a noncontrolled substance after the Pennsylvania Crime Lab determined that the substance delivered on August 11, 2016, was not a controlled substance.

---

The Commonwealth presented the testimony of Agents Christopher Burnell and Sean Gelchion from the Pennsylvania Office of Attorney General, as well as the testimony of the confidential informant (hereinafter, "CI"). The Commonwealth's case-in-chief alleged that Appellant delivered crack cocaine to the CI on July 25, 2017. Appellant was found not guilty by the jury on Counts 1 and 3, which related to that incident.

The Commonwealth's evidence also showed that on August 11, 2016, a controlled buy for crack cocaine was attempted. The CI called and spoke to Appellant who agreed to meet him at Tank Alley in Beaver Falls, Pennsylvania for the purpose of selling him crack cocaine.

The CI was searched prior to and after the purchase and no contraband was found. The CI was provided pre-recorded U.S. currency in the amount of $80.00.

The completion of a hand-to-hand transaction from Appellant to the CI was witnessed by Agent Gelchion and captured on video by the agents for the Office of Attorney General. The white chalky substance which was purchased appeared to the agents and to the CI to be crack cocaine, and the packaging was consistent with crack cocaine. Further, the amount of the substance that appeared to be crack cocaine was consistent with a sale for $80.00. The substance was not field tested, but was submitted to the Pennsylvania crime lab for testing, where it was determined not to be a controlled substance.

In his case-in-chief, Appellant testified on his own behalf. In his testimony, Appellant admitted all of the essential elements of the distribution or sale of a noncontrolled substance, but claimed that he only did it in order to get the CI to stop calling him.

Appellant testified that on July 25, 2016, the CI called to meet him and, upon meeting him, asked to by crack cocaine from him. N.T., 7/11/17, at 240-44. Appellant stated that he did not sell crack cocaine to the CI, but instead introduced him to Quincy Roberts, known as "Q," who lived in the same apartment building, and who he knew could sell cocaine to the CI.[2] N.T. 7/11/17, at 244-46. Appellant testified that afterward the CI called him numerous times, and that Appellant placed [the CI's] number under "do not answer" in his cell phone, in order to block his calls. N.T., at 246-47.

---

[2] This incident, which the Commonwealth charged under Counts 1 and 3, and [for] which the jury found Appellant not guilty, occurred inside an apartment building and out of sight of the agents.

---

Regarding the controlled buy that occurred on August 11, 2017, Appellant testified that the CI called Appellant's girlfriend, whose phone number was listed on Appellant's Facebook page. N.T, at 250. Appellant testified that he already made up his mind what he would do, that he would put something in a baggie that was not drugs so that afterward the CI would not call him anymore. N.T., at 251-53.

Appellant admitted giving the noncontrolled substance to the CI and taking the $80.00 from him in exchange. *Id*. He stated that he filled a plastic baggie with drywall that he found in Tank Alley prior to the CI's arrival. N.T., at 251-53, 264-65. He explained that he had seen crack cocaine in person before and knew how it is packaged, and that the substance which he gave the CI did look like drugs. N.T., at 263-64. He said that he kept the $80.00 that he received from the CI because he wanted the CI to think the plastic baggie contained drugs. N.T., at 265. He testified that he sold the noncontrolled substance to the CI because the CI kept calling him, and he believed that when the CI tried to use the

noncontrolled substance and discovered that it was not drugs that the CI would not call him anymore. N.T., at 265-66.

Appellant's attorney argued a defense of entrapment, and the jury was instructed by the court on entrapment. After deliberations, the jury found Appellant not guilty on Counts 1 and 3 for the unlawful delivery [of controlled substances] that was alleged to have occurred on July 25, 2017, but found Appellant guilty on Count 4, distribution or sale of a noncontrolled substance for the incident that occurred on August 11, 2017.

Appellant was sentenced on August 30, 2017, to, *inter alia*, twenty-one months to sixty months in a state correctional institution. Appellant filed a Notice of Appeal on September 27, 2017. On September 29, 2017, the court entered an Order directing Appellant to file a Concise Statement, per Pa.R.A.P. 1925(b). Appellant filed his Concise Statement on October 20, 2017.

Trial Court Opinion, filed November 2, 2017, at 1-4.

Appellant presents the following question for our review:

**I.     WHETHER THE APPELLANT'S CONVICTION OF DISTRIBUTION/SALE OF A NON CONTROLLED SUBSTANCE, 35 PA.C.S.A. 780-113(A)(35)(II), SHOULD BE REVERSED BECAUSE THE COMMONWEALTH FAILED TO PRESENT SUFFICIENT EVIDENCE TO REBUT THE PRESUMPTION OF ENTRAPMENT ESTABLISHED BY THE APPELLANT?**

Appellant's brief, at 8.

Initially, we note that Appellant misconstrues the allocation of evidentiary burdens when he posits that the Commonwealth failed to rebut a presumption of entrapment established by Appellant. As explained below, Appellant, alone, bore the burden of proving by a preponderance of the evidence that his illegal conduct—which he concedes the Commonwealth proved beyond a reasonable doubt—was the product of an entrapment carried

- 4 -

out by law enforcement officials. If Appellant met this burden, he was entitled

to an acquittal. To the extent Appellant contends that he carried his burden

of proof in this regard, we address that portion of his question presented.

The Crimes Code defines the defense of entrapment in relevant part as

follows:

> **§ 313. Entrapment**
>
> **(a) General Rule.**—A public law enforcement official or a person acting in cooperation with such an official perpetrates an entrapment if for the purpose of obtaining evidence of the commission of an offense, he induces or encourages another person to engage in conduct constituting such offense by either:
>
> (1) making knowingly false representations designed to induce the belief that such conduct is not prohibited; or
>
> (2) employing methods of persuasion or inducement which create a substantial risk that such an offense will be committed by persons other than those who are ready to commit it.
>
> **(b) Burden of Proof.**—Except as provided in subsection (c) of this section, a person prosecuted for an offense shall be acquitted if he proves by a preponderance of the evidence that his conduct occurred in response to an entrapment.

18 Pa.C.S.A. § 313(a)-(b).

> Pennsylvania courts apply an objective test for entrapment:
>
> [T]he test for entrapment has shifted in emphasis from a consideration of a particular defendant's readiness to commit crime, a subjective test, to an evaluation of the police conduct, an objective test, to determine whether there is a substantial risk that the offense will be committed by those innocently disposed. To determine whether an entrapment has been perpetrated in any particular case, therefore, the inquiry will focus on the **conduct of the police** and will not be concerned with the defendant's prior

- 5 -

criminal activity or other *indicia* of a predisposition to commit crime.

***Commonwealth v. Marion***, 981 A.2d 230, 238 (Pa. Super. 2009), (quotation and citation omitted; emphasis added). As we explained in ***Marion***:

> [T]he objective approach conceives the entrapment defense as aimed at deterring police wrongdoing. The defense provides a sanction for overzealous and reprehensible police behavior comparable to the exclusionary rule. The focus of the defense is on what the police do and not on what kind of person the particular defendant is—whether he is innocent or predisposed to crime.

***Id.***, at 238 (quotation and citation omitted).

"In their zeal to enforce the law, government agents may not originate a criminal design, implant in an innocent person's mind the disposition to commit a criminal act and then induce commission of the crime so that the government may prosecute." ***Commonwealth v. Borgella***, 611 A.2d 699, 701 (Pa. 1992) (citing ***Jacobson v. United States***, 503 U.S. 540, (1992) (holding evidence supported entrapment instruction where paid police informant used false pretenses to secure defendant's confidence, encouraged defendant to buy drugs, and offered defendant lucrative job on condition that defendant provide drugs)).

> Where police 'do no more than afford appellant an opportunity' to commit an illegal act, their actions are not considered sufficiently outrageous police conduct to support an entrapment defense. Thus, the availability of the entrapment defense under the statute does not preclude the police from acting "so as to detect those engaging in criminal conduct and ready and willing to commit further crimes should the occasion arise. Such indeed is their obligation."

> Pennsylvania case law has consistently held:

> [T]he determination of whether police conduct constitutes entrapment is for the jury, unless the evidence of police conduct clearly establishes entrapment as a matter of law.... Thus, after the defense of entrapment has been properly raised, the trial court should determine the question as a matter of law wherever there is no dispute as to the operative facts relating to the defense.

*Marion*, 981 A.2d at 239 (citations omitted).

Here, the entirety of Appellant's argument consists of the following statement: "The Appellant proved to a preponderance of the evidence the defense of entrapment in that [the CI] continually called him requesting drugs after the Appellant told him he did not sell drugs. [The CI's] testimony confirmed that multiple phone calls occurred between the time period of the controlled buys." Appellant's brief, at 16. Assuming, *arguendo*, Appellant has developed his argument adequately to gain merits review, we discern no merit to his claim.

At Appellant's trial, Appellant testified that the C.I.'s unsolicited calls for crack became so bothersome that he agreed to the August 11, 2016, drug buy only to carry out a sham sale as a means to deter the CI from calling him again.

The C.I. denied the suggestion that he had to harass Appellant before Appellant agreed to transact with him. Specifically, the C.I. testified that Appellant always welcomed the phone calls from him and, on August 11, 2016, instantly agreed to the proposed drug buy between them:

**Q:** [C.I.], the phone calls that you made to Andre Ikard when you were with the agents?

- 7 -

**A:**   Yes.

**Q:**   Do you remember talking to him and the agents listening?

**A:**   Yes.

**Q:**   How would you describe those, the tone of those conversations?  By that I mean, were they friendly, were they unfriendly, were they hostile?

**A:**   No, "Hey, what's up."  "You gave me the number."  "Can I come through?"  "Yes."

**Q:**   Okay.

**A:**   "I'm in Rochester.  If you can get a ride over come over."

**Q:**   Okay.  And who always picked the meeting [place] on those two occasions?

**A:**   If he was somewhere I went to him.

**Q:**   And as well on August 11th during those phone calls, what was the tone?

**A:**   Same as always.

**Q:**   Okay.

N.T., 7/11/17, at 235-36.

In light of this conflicting evidence, the court instructed the jury as to the entrapment defense, and the jury was required to determine whether the preponderance of the evidence established that law enforcement agents, through their use of the C.I., engaged in overzealous behavior that created a substantial risk of inducing an innocent person to commit crime.  We conclude that a reasonable jury could have found, given the evidence before it and acting within its exclusive province as finder of fact, that the C.I.'s phone calls

to Appellant did not constitute egregious conduct creating an impermissible risk of inducing Appellant to commit crime. Accordingly, we reject Appellant's contention that he proved his claim of entrapment.

Judgment of sentence is AFFIRMED.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/16/2018