J-S18040-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JAMES F. HOLMES | : | |
| | : | |
| Appellant | : | No. 1671 MDA 2018 |

Appeal from the Judgment of Sentence Entered February 28, 2018
In the Court of Common Pleas of Lycoming County Criminal Division at
No(s):  CP-41-CR-0002155-2015

BEFORE:   BOWES, J., NICHOLS, J., and STEVENS*, P.J.E.

MEMORANDUM BY STEVENS, P.J.E.:                **FILED JULY 16, 2019**

Appellant James F. Holmes appeals from the judgment of sentence entered in the Court of Common Pleas of Lycoming County following his conviction by a jury on six counts of criminal solicitation (to commit involuntary deviate sexual intercourse with a child, sexual assault, sexual exploitation of children, aggravated indecent assault on a child, sexual abuse of children, and indecent assault on a person less than 13 years of age), one count of trafficking in minors, and one count of criminal use of a communication facility.[1]  After a careful review, we affirm.

The relevant facts and procedural history are as follows: Following his arrest, Appellant, who was represented by counsel, proceeded to a jury trial

---

[1] 18 Pa.C.S.A. §§ 902, 3011, and 7512, respectively.

---

\*   Former Justice specially assigned to the Superior Court.

on June 1, 2017. At trial, M.H. testified she has a daughter who was born in November of 2014, and she posted photos of her infant daughter on Facebook in November and December of 2014. N.T., 6/1/17, at 56. M.H. indicated that, on December 13, 2014, she began having a conversation on Facebook with a person who identified himself as "Craig Jones." *Id.* The parties stipulated at trial that "Craig Jones" was actually Appellant. *Id.* at 57. M.H. testified that she later permitted the Pennsylvania State Police to access her Facebook account and download the messages. *Id.*

At trial, M.H. read the messages into evidence. The transcript contains numerous references to obscene messages from Appellant relating to inappropriate sexual contacts with a baby. The following relevant exchange occurred between M.H. and the assistant district attorney ("ADA"):

> **Q.** All right. What I would like you to do, [M.H.], is read through the messages. And what I'm going to need you to do is indicate what date they were sent and also who is speaking for a given text.
>
> > **THE COURT:** Do you want her to read each text?
> >
> > **[ADA]:** I do.
> >
> > **THE COURT:** Okay.
>
> **Q.** So what was the date when the first message was sent?
>
> **A.** December 13th, 2014.
>
> **Q.** Okay. Sorry. You can go ahead.
>
> **A.** Me: Hi, how are you?
>
> > Him: Good and you? You remember me? Are you there?
> >
> > Me: Good.
> >
> > Him: How's the baby?
> >
> > Me: Good you?

Him: Laugh out loud.  Good.  Is Beeley ever going to marry you?  And do you remember who this is?

**Q.** Let me stop you there just for a moment.  Who is Beeley?

**A.** My boyfriend.

**Q.** You may continue.  Thank you.

**A.** Me: I do not know.  Yeah, I know you.

Him: Cool.  Do you remember our names and where we met you?

Me: You never met us.

**Q.** All right.  And what's the date of the first message on the next page?

**A.** December 14th.

**Q.** All right.  You can continue.

**A.** Him: Yes, we did.  You know us as someone else.

Me: Who then?

Me: We-where we met [*sic*] at?

Me: Hey?

Him: Sorry it took a while to get Facebook messages to work on my phone.  We met you and Beeley in Palmerton.  We love it— we loved you.  Found him to be a bit—a[n] arrogant jerk.  Hoping some day to get to know you.  We liked it—you a lot.  Wish we could marry you.

Me: At a hotel?

Him: Laugh out loud.  Yes.

**Q.** Okay.  Had you met [Appellant] at a hotel before?

**A.** Yes.

**Q.** All right.  And on the next page, the first message, what's the date of that?

**A.** December 19th.

**Q.** Okay.  You can continue.

**A.**  Me: How old is he?  You both want [to] f*** me in—this weekend.

**Q.** When you said how old is he now, who were you referring to?

**A.** His son.

**Q.** You can continue.

**A.** Him: Are you still involved with him?  He is five now.  And he wants to—we want to f*** you every weekend and every day.

Me: Yes.  But I want you to make him watch.

Him: Only if you lick your daughter in front of us first and make Healey watch.

**Q.** You can continue.

**A.** Me: Who's Healey?

Him: Beeley.  Sorry.  Typo.  Got a meeting.  Talk to you in [an] hour.

Me: Yes.  And you have any more kids?

Me: You—so you want [to] meet Saturday night[?]

Him: Yes.  Yeah.  We are trying for another.  So trying to figure out what you want us to do.  F*** you in front of our son or your boyfriend?

Me: Both.

*Id.* at 58-61.[2]

M.H. testified that, at some point in 2015, after making plans to meet Appellant, who believed M.H. was going to bring her daughter, M.H. traveled on a bus with law enforcement officers.  *Id.* at 64-65.  Upon arrival at the bus station where she was supposed to meet Appellant, M.H. watched as the police arrested Appellant. *Id.* at 65.

On cross-examination, M.H. testified her boyfriend, Beeley, was in prison at the time she corresponded with Appellant.  *Id.* at 74.  She testified she initially contacted Appellant on her own via Facebook with the idea of

---

[2] The notes of testimony contain graphic, obscene language, and we have omitted much of that language from this decision.

soliciting information from him in the hope that she could use it to "shave time off" of her boyfriend's prison sentence. *Id.*

Pennsylvania State Police Corporal Jeffrey Vilello, who has been in law enforcement for twenty-one years and is certified to conduct interceptions/electronic surveillance, testified that, in December of 2014, he interviewed M.H. in connection with an investigation unrelated to the instant case. *Id.* at 79. Thereafter, in early November of 2015, M.H. showed Corporal Vilello her Facebook communications, which M.H. had with "Craig Jones" in December of 2014. *Id.* at 87. Believing "Craig Jones" was soliciting sexual activity with children, Corporal Vilello asked M.H. to work as an informant and assist the State Police in identifying "Craig Jones." *Id.* at 80. M.H. agreed. *Id.* at 88.

Corporal Vilello indicated that, posing as M.H., he began communicating with "Craig Jones" (later identified as Appellant) via Facebook. *Id.* Also, "[M.H.'s] phone was…used under [the corporal's] direction and use[d] to communicate with the individual who was portraying himself through Facebook as Craig Jones." *Id.* Specifically, Corporal Vilello testified that, on November 4, 5, and 6, 2015, posing as M.H., he used M.H.'s cell phone to communicate with Appellant via text.[3] *Id.* at 88-89. He noted the police

---

[3] The parties stipulated at trial that all text messages sent from "Craig Jones's" cell phone to M.H.'s cell phone during this time were actually sent by Appellant. *Id.* at 89.

computer unit extracted the text messages from M.H.'s cell phone and saved them. *Id.* at 90.

The following relevant exchange occurred between Corporal Vilello and the ADA regarding the text messages:

**Q.** What is the date and time of the first message in the conversation?

**A.** Number one, the first message is November 4th, 2015, at 8:59 p.m., which was UTC minus five.

**Q.** Okay. And at this point in time were you operating the phone?

**A.** Yes, I was.

**Q.** Okay. All right. And looking through these text messages, were you operating the phone during this conversation?

**A.** Yes. After I became involved in the investigation all the communication that was done between an individual who portrayed himself as Craig Jones was under my direction or I was conducting it.

**Q.** All right. I'm just going to have you read the conversation into evidence then and identify who is sending and who's—yeah, who's sending each message.

**A.** Okay. Number one, a message was sent on 11/4/2015. Hey, this is [M.H.]. It was followed up by a second, you there? Message was received. It said hey. Message received again, so you serious or f****** with me?

Sent message from [M.H.'s] phone, I am serious; and can we do like before? He responds, like before? How you mean sweetie? Sent, 4 of us? The next message is sent, no Beeley. He responds, you, me, my wife, and question mark?

Judge, do you want me to continue?

**THE COURT:** Yes, please.

**[ADA]:** Yes.

**THE WITNESS:** Sent, little man, question mark. Response—

**[DEFENSE COUNSEL]:** Now, when you're saying who sent, as long as they say who sent it, either the trooper or [M.H.], so we're not—so we know who's sending things.

**THE WITNESS:** Sent would have been myself at this point.

**[DEFENSE COUNSEL]:** So these are all messages sent by you?

**THE WITNESS:** These are messages sent by me through her phone.

\*\*\*

He also responds, and so you know, if you become a member of our family our first order of business is to help you get your teeth fixed. I know that is a selfies stem [*sic*] issue for you and very sensitive and painful for you to talk about. But I want you to know that we would care enough to address that for you. His next response, by the way, nice p\*\*\*y.

Responded back, I did not get time to change my status. We're in the process to break up. I'm like to joining your family.

*Id.* at 91-92, 95-96.

Trooper Vilello testified that, posing as M.H., he communicated with Appellant via text for approximately a month, and at some point, they made arrangements for M.H., as well as her daughter, to travel by bus to visit Appellant. *Id.* at 96-97. Trooper Vilello indicated Appellant "was pretty insistent that [M.H.] bring the child." *Id.* at 97. Also, in a telephone conversation between Appellant and M.H. regarding the upcoming visit, Appellant asked M.H. if he could adopt M.H.'s daughter if M.H. decided not to live with Appellant. *Id.* at 100.

Trooper Vilello testified that he accompanied M.H., who carried a doll that looked like a baby, on the bus to visit Appellant on December 4, 2015. *Id.* at 102-03. He indicated that, after M.H. exited the bus, Appellant approached, grabbed her by the arm, and said, "let's go [M.H.]." *Id.* at 103.

At this point, Appellant was arrested, and his iPhone 4, which contained the messages indicated *supra*, was seized from his person. *Id.* at 103-04. Trooper Vilello noted that, during the bus ride, posing as M.H., he sent messages to Appellant, and the last message he had sent was "pictured on [Appellant's] iPhone 4." *Id.* at 104. He testified the police executed a search warrant on Appellant's iPhone 4 and extracted the communication, including text messages and photographs, between Appellant and M.H.'s phone. *Id.* at 105. Trooper Vilello noted that, during the Facebook communication and text messages, Appellant never revealed his true identity and, when asked, he refused to send a picture of himself. *Id.* at 152-53.

At the conclusion of all evidence, the jury convicted Appellant of the offenses indicated *supra*. On December 18, 2017, the trial court imposed sentence,[4] and Appellant filed a timely, counseled post-sentence motion on

---

[4] In its December 18, 2017, sentencing order, after imposing individual sentences for each conviction, the trial court stated the aggregate sentence was 13 years to 27 years in prison. However, a review of the individual sentences reveals the aggregate sentence was actually 13 years to 26 years in prison, to be followed by 1 year of probation. The trial court later discovered the mathematical error contained in its December 18, 2017, sentencing order, and on February 28, 2018, the trial court entered a corrected sentencing order. Specifically, in the corrected order, the trial court stated Appellant's individual sentences remained unchanged and the aggregate sentence imposed upon Appellant was 13 years to 26 years in prison, to be followed by 1 year of probation. *See Commonwealth v. Borrin*, 12 A.3d 466 (Pa.Super. 2011) (holding trial court has inherent power to correct patent and obvious mistake in sentencing order, even beyond the 30 day time limit provided for in 42 Pa.C.S.A. § 5505).

December 28, 2017.[5] Appellant's post-sentence motion was denied by operation of law on September 17, 2018, and this counseled appeal followed on October 5, 2018.[6] The trial court directed Appellant to file a statement pursuant to Pa.R.A.P. 1925, Appellant timely complied, and the trial court filed a responsive opinion.

On appeal, Appellant presents the following issues in his "Statement of Questions Involved":

I.    Whether the evidence presented at trial was sufficient to satisfy the burden of proof required for the crimes of solicitation and trafficking?

II.    Whether the evidence was insufficient to sustain the verdict with regard to the crimes of solicitation and trafficking when the evidence demonstrated that it was impossible for the targeted child to be available due to the child previously being removed from the custody of the biological mother and Commonwealth witness, [M.H.]?

III.    Whether the evidence was insufficient to sustain the verdict because the Commonwealth failed to provide required discovery such as additional cell phone text messages and

---

[5] By order entered on January 31, 2018, the trial court gave Appellant a thirty day extension so that Appellant could file a supplemental post-sentence motion upon receipt of the transcripts. *See* Pa.R.Crim.P. 720(B)(3)(b). However, Appellant never filed a supplemental post-sentence motion.

[6] We note the trial court judge signed the September 17, 2018, order beyond the time limits for deciding Appellant's post-sentence motion. *See* Pa.R.Crim.P. 720(B)(3) (pertaining to time limits). Pursuant to Pa.R.Crim.P. 720(B)(3)(c), when the post-sentence motion is denied by operation of law, the Clerk of Courts is tasked with the duty of deeming the motion denied on behalf of the trial court and serving copies of the order upon the parties. However, we shall overlook the error and proceed to consider the merits of Appellant's issues. *See Commonwealth v. Patterson*, 940 A.2d 493 (Pa.Super. 2007) (overlooking breakdown in the trial court process).

Facebook messages that would have allowed Appellant to properly present the defense of impossibility?

IV. In the alternative, whether the evidence was insufficient to sustain the verdict, and Appellant cannot be found guilty, due to the defense of entrapment where Commonwealth witness, [M.H.], did operate at all times as an agent of the Commonwealth?

V. Whether the evidence was insufficient to sustain the verdict because the results of the search conducted on Appellant's iPhone 4 were unlawfully obtained following the seizure of the phone due to the unreasonable seventeen (17) month period that transpired between the phones [*sic*] seizure and search of the phone?

VI. Whether the verdict was against the weight of the evidence because the Commonwealth witness, [M.H.], failed to testify credibly and was motivated to fabricate her testimony by virtue of her ongoing cooperation with the Commonwealth?

VII. Whether the verdict was against the weight of the evidence because the Commonwealth failed to prove that it was the intention of Appellant to commit the crimes of solicitation and trafficking as evidenced by Appellant's conversation with [M.H.]?

Appellant's Brief at 5-6.[7]

In his first issue, Appellant avers the evidence was insufficient to sustain his conviction for criminal solicitation since the Commonwealth failed to prove all of the necessary elements for the offense. Specifically, he avers the Commonwealth failed to prove Appellant commanded/encouraged/requested a person to engage in a crime or he had the specific intent to promote or

---

[7] We note the Commonwealth did not file an appellee brief in this matter; but rather, the Commonwealth filed a short letter indicating it was relying entirely on the trial court's opinion.

facilitate a crime. He also avers the evidence reveals he completely and voluntarily renounced the solicitation offenses such that he is not culpable.[8] We find this issue to be waived.

Initially, we note Appellant was convicted of six counts of solicitation: criminal solicitation to commit involuntary deviate sexual intercourse with a child, criminal solicitation to commit sexual assault, criminal solicitation to commit sexual exploitation of children, criminal solicitation to commit aggravated indecent assault on a child, criminal solicitation to commit sexual abuse of children, and criminal solicitation to commit indecent assault on a person less than 13 years of age. However, in the argument section of his brief, he avers generally that he did not command/encourage/request a person to engage in a crime, he did not have the specific intent to promote or facilitate a crime, and he renunciated the crime before its completion. *See* 18 Pa.C.S.A. § 902.[9]

_____

[8] In his "Statement of Questions Involved," Appellant presented his first issue as challenging the sufficiency of the evidence for solicitation and trafficking; however, his first argument section develops a sufficiency argument as to solicitation only. Thus, we limit our analysis accordingly.

[9] 18 Pa.C.S.A. § 902, pertaining to solicitation, provides the following:
   **(a) Definition of solicitation.--**A person is guilty of solicitation to commit a crime if with the intent of promoting or facilitating its commission he commands, encourages or requests another person to engage in specific conduct which would constitute such crime or an attempt to commit such crime or which would establish his complicity in its commission or attempted commission.

In any event, we conclude Appellant did not preserve this sufficiency issue in his court-ordered Pa.R.A.P. 1925(b) statement. Our Courts have consistently ruled that, where a trial court directs a defendant to file a concise statement pursuant to Pa.R.A.P. 1925, any issues not raised in that statement shall be waived. **Commonwealth v. Bullock**, 948 A.2d 818 (Pa.Super. 2008) (citing **Commonwealth v. Lord**, 553 Pa. 415, 719 A.2d 306 (1998)). In **Commonwealth v. Butler**, 571 Pa. 441, 812 A.2d 631, 633 (2002), our Supreme Court reaffirmed its holding in **Lord** and stated: "In **Lord**, however, this Court eliminated any aspect of discretion and established a bright-line rule for waiver under Rule 1925….Thus, waiver under Rule 1925 is automatic." **See Commonwealth v. Oliver**, 946 A.2d 1111, 1115 (Pa.Super. 2008) (noting that **Lord** "requires a finding of waiver whenever an appellant fails to raise an issue in a court-ordered Pa.R.A.P. 1925(b) statement").

Here, while Appellant averred in his Rule 1925(b) statement that the evidence was insufficient to sustain his convictions for solicitation due to "factual impossibility" and "entrapment,"[10] he did not present in his Rule 1925(b) statement the issue of whether the Commonwealth failed to prove

---

**(b) Renunciation.--**It is a defense that the actor, after soliciting another person to commit a crime, persuaded him not to do so or otherwise prevented the commission of the crime, under circumstances manifesting a complete and voluntary renunciation of his criminal intent.

18 Pa.C.S.A. § 902(a)-(b).

[10] We address these specific issues *infra*.

the elements necessary for solicitation. Specifically, he did not allege in his Rule 1925(b) statement that the Commonwealth failed to prove Appellant commanded/encourage/requested a person to engage in a crime, he had the specific intent to promote or facilitate a crime, or he did not renunciate the crime before its completion. Thus, we find Appellant's first issue to be waived. *See* Pa.R.A.P. 1925(b)(vii) ("Issues not included in the Statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived.").

In his second issue, Appellant contends the evidence was insufficient to sustain any of his solicitation convictions or his trafficking conviction[11] since the evidence demonstrated that it was factually impossible for him to have committed the crimes. In this vein, he avers "during the time of

---

[11] 18 Pa.C.S.A. § 3011, pertaining to trafficking in minors, provides the following:

> **(a) Offense defined.--**A person commits a felony of the second degree if the person:
> (1) recruits, entices, solicits, harbors, transports, provides, obtains or maintains an individual if the person knows or recklessly disregards that the individual will be subject to involuntary servitude; or
> (2) knowingly benefits financially or receives anything of value from any act that facilitates any activity described in paragraph (1).
> **(b) Trafficking in minors.--**A person commits a felony of the first degree if the person engages in any activity listed in subsection (a) that results in a minor's being subjected to sexual servitude.

18 Pa.C.S.A. § 3011.

- 13 -

communication, because Appellant was aware of the removal from [M.H.'s] custody of her minor daughter by the Commonwealth, [Appellant] was unable to fully intend for any illegal activity involving the minor child to transpire. It would have been factually impossible." Appellant's Brief at 21. That is, Appellant contends it was factually impossible for him to have formed the necessary specific intent for his solicitation and trafficking convictions since M.H. did not have custody of her daughter at the time of the communications at issue, and Appellant was aware of this fact. **See id.**

While Appellant makes a bald assertion in his brief that M.H. did not have custody of her daughter, and he was aware of this fact, Appellant has neither identified the evidence/testimony supporting his assertion nor pointed to that place in the record where such evidence/testimony was admitted into evidence. **See id.** Further, the trial court made no finding that would support Appellant's assertion.[12] We decline to scour the record in an effort to find evidence/testimony that supports Appellant's allegation. Inasmuch as Appellant's "factual impossibility" sufficiency argument rests entirely upon

---

[12] In its opinion, with regard to Appellant's claim of factual impossibility, the trial court focused on Appellant's conviction for criminal solicitation to commit involuntary deviate sexual intercourse with a child. Trial Court's Pa.R.A.P. 1925(a) Opinion, filed 12/5/18, at 4-5. The trial court concluded the evidence sufficiency established Appellant's *mens rea* for the crime based on messages Appellant sent such that "any claims centered on factual impossibility must fail." **Id.** at 5. The trial court made no finding suggesting that M.H. did not have custody of her child during this time or that Appellant was aware of such fact, as Appellant alleges on appeal.

Appellant's bald allegation, we conclude Appellant is not entitled to relief on this claim.

In his third issue, Appellant contends the Commonwealth failed to provide mandatory discovery, such as additional cell phone text messages and Facebook messages, which would have allowed Appellant to properly present a defense of impossibility.[13] Appellant's entire argument in this regard is as follows (verbatim):

> The Pennsylvania Rules of Criminal Procedure dictate that the Commonwealth shall disclose to opposing counsel evidence which is material to either guilt or punishment of the accused.[37] If failure to disclose mandatory discovery results in substantial or significant prejudice to the accused, remedy may be granted by the Court.[38]
>
> In this case, the Commonwealth failed to disclose to opposing counsel, prior to trial, additional text and Facebook messages within its possession which would have allowed trial counsel the opportunity to properly raise, *inter alia*, a defense of factual impossibility. As a result of the Commonwealth's failure to disclose, trial counsel suffered substantial prejudice in being able to properly investigate, prepare for, and present said defense at trial, one which is inherently material toward the guilt of the accused.
>
> ---
> 37 Pa.R.Crim.P. 573(B)(1)(A).
> 38 *Commonwealth v. Hood*, 872 A.2d 175, 181 (Pa.Super. 2005).

Appellant's Brief at 22-23 (footnotes in original).

Initially, we note Pa.R.Crim.P. 573, pertaining to pretrial discovery and inspection, relevantly provides the following:

---

[13] Although Appellant phrased this issue in his "Statement of Questions Involved" as relating to a sufficiency of the evidence claim, we conclude the issue pertains to whether the Commonwealth complied with its discovery obligations under Pa.R.Crim.P. 573.

- 15 -

## Rule 573.  Pretrial Discovery and Inspection

\*\*\*

### (B) Disclosure by the Commonwealth.

(1) *Mandatory*.  In all court cases, on request by the defendant, and subject to any protective order which the Commonwealth might obtain under this rule, the Commonwealth shall disclose to the defendant's attorney all of the following requested items or information, provided they are material to the instant case.  The Commonwealth shall, when applicable, permit the defendant's attorney to inspect and copy or photograph such items.

(a) Any evidence favorable to the accused that is material either to guilt or punishment, and is within the possession or control of the attorney for the Commonwealth.

Pa.R.Crim.P. 573(B)(1)(a).

In the case *sub judice*, Appellant has failed to identify precisely what information or statements were allegedly contained in the "additional text and Facebook messages within [the Commonwealth's] possession," how the information or statements would have assisted him in preparing the defense of factual impossibility, or, in fact, how the information or statements would have been "material to the instant case."  Pa.R.Crim.P. 573(B).  Appellant has not identified the date or the parties involved in the alleged messages.  Simply put, Appellant's vague assertion that the Commonwealth failed to disclose "additional text and Facebook messages within its possession which would have allowed trial counsel the opportunity to properly raise, *inter alia*, a defense of factual impossibility" does not merit relief.

In his fourth issue, Appellant claims he sustained his burden of proving that his illegal conduct was the product of an entrapment carried out by law

- 16 -

enforcement officials, as well as M.H. who was acting as an agent for the police.

The Crimes Code defines the defense of entrapment, in relevant part, as follows:

> **§ 313. Entrapment**
>
> **(a) General rule.—**A public law enforcement official or a person acting in cooperation with such an official perpetrates an entrapment if for the purpose of obtaining evidence of the commission of an offense, he induces or encourages another person to engage in conduct constituting such offense by either:
>
>> (1) making knowingly false representations designed to induce the belief that such conduct is not prohibited; or
>>
>> (2) employing methods of persuasion or inducement which create a substantial risk that such an offense will be committed by persons other than those who are ready to commit it.
>
> **(b) Burden of proof.—**Except as provided in subsection (c) of this section, a person prosecuted for an offense shall be acquitted if he proves by a preponderance of evidence that his conduct occurred in response to an entrapment.[14]

18 Pa.C.S.A. § 313(a)-(b) (footnote added).

---

[14] Subsection 313(c) provides:
> **(c) Exception.--**The defense afforded by this section is unavailable when causing or threatening bodily injury is an element of the offense charged and the prosecution is based on conduct causing or threatening such injury to a person other than the person perpetrating the entrapment.

18 Pa.C.S.A. § 313(c). To the extent Appellant's offenses are included within the exception, he would not be entitled to the defense of solicitation. In any event, as discussed *infra*, Appellant is not otherwise entitled to the defense of solicitation, and we need not discuss further the exception provided for in Subsection 313(c).

Pennsylvania courts apply an objective test for entrapment:

[T]he test for entrapment has shifted in emphasis from a consideration of a particular defendant's readiness to commit crime, a subjective test, to an evaluation of the police conduct, an objective test, to determine whether there is a substantial risk that the offense will be committed by those innocently disposed. To determine whether an entrapment has been perpetrated in any particular case, therefore, the inquiry will focus on the conduct of the police and will not be concerned with the defendant's prior criminal activity or other *indicia* of a predisposition to commit crime.

*Commonwealth v. Marion*, 981 A.2d 230, 238 (Pa.Super. 2009) (quotation and citation omitted).

As we have explained:

[T]he objective approach conceives the entrapment defense as aimed at deterring police wrongdoing. The defense provides a sanction for overzealous and reprehensible police behavior comparable to the exclusionary rule. The focus of the defense is on what the police do and not on what kind of person the particular defendant is—whether he is innocent or predisposed to crime.

*Id.* at 238 (quotation and citation omitted).

"In their zeal to enforce the law, government agents may not originate a criminal design, implant in an innocent person's mind the disposition to commit a criminal act and then induce commission of the crime so that the government may prosecute." *Commonwealth v. Borgella*, 531 Pa. 139, 611 A.2d 699, 701 (1992) (citation omitted).

Where police "do no more than afford [an] appellant an opportunity" to commit an illegal act, their actions are not considered sufficiently outrageous police conduct to support an entrapment defense. *Marion*, 981 A.2d at 238.

Thus, the availability of the entrapment defense under the statute does not preclude the police from acting "so as to detect those engaging in criminal conduct and ready and willing to commit further crimes should the occasion arise. Such indeed is their obligation."[15] *Id.*

In the case *sub judice*, we agree with the trial court that a reasonable jury could have found, given the evidence before it and acting within its exclusive province as fact finder, that the police conduct did not constitute egregious conduct creating an impermissible risk of inducing Appellant to commit a crime. Here, there was evidence indicating that M.H. and Appellant had met each other some time prior to 2014. N.T., 6/1/17, at 59. Specifically, Appellant, his wife, M.H., and M.H.'s boyfriend had sex in a hotel. *Id.* at 60, 68, 92.

Beginning on December 13, 2014, M.H. began conversing with Appellant (who called himself "Craig Jones") via Facebook without any direction from the police. *Id.* at 59, 80-82. For instance, in a December 19, 2014, Facebook conversation, Appellant indicated he wanted M.H. to lick her infant daughter in front of Appellant, and he suggested having sex with M.H. in front of his

---

[15] We note "the determination of whether police conduct constitutes entrapment is for the jury, unless the evidence of police conduct clearly establishes entrapment as a matter of law." *Marion*, 981 A.2d at 239 (citations omitted).

five-year-old son. *Id.* at 60-61. He also asked M.H. if she had "licked [her] daughter's p***y yet[.]" *Id.* at 61.

Thereafter, beginning in early November of 2015, M.H. contacted the police and showed them her Facebook account. *Id.* at 87. She then agreed to work as an informant for the police and permit Corporal Vilello to assume her identity on Facebook and text for purposes of communicating with "Craig Jones" so that the police could determine his true identity. *Id.* at 80. Corporal Vilello indicated he posed as M.H. on Facebook for "only a day," and since Appellant had provided his phone number to M.H., he posed as M.H. and began texting Appellant. *Id.* at 88-89.

In the text messages, Appellant escalated the situation by requiring proof of M.H.'s loyalty and trust. Also, during the text messages, Appellant asked M.H. to come and visit him, and he insisted she bring her infant daughter. *Id.* at 96.

Based on the aforementioned, we agree with the trial court that a reasonable jury could have concluded that the police did not originate a criminal design, implant in an innocent person's mind the disposition to commit a criminal act, and then induce Appellant to commit crimes so that the government could prosecute him. *See Borgella*, *supra*. Appellant had ample opportunity to not participate in the Facebook and text messages, to notify authorities, or just to sever his communication/relationship with M.H. He declined to do so, and, in fact, escalated the situation.

Given these facts, we conclude the police simply gave Appellant an opportunity to commit his crimes and, thus, the jury properly determined Appellant did not meet his burden of proving by a preponderance of the evidence that his conduct occurred in response to an entrapment. 18 Pa.C.S.A. § 313(b).[16] Consequently, Appellant is not entitled to relief on this claim.

In his fifth issue, Appellant suggests the Commonwealth's delay in executing a search warrant and retrieving information from Appellant's iPhone, which the Commonwealth had in its possession, caused unfair prejudice since it hindered defense counsel's trial preparation.[17] Appellant's entire argument with regard to this issue is as follows (verbatim):

> The Pennsylvania Rules of Criminal Procedure dictate that the Commonwealth shall disclose to opposing counsel evidence within its control which is material to either guilt or punishment of the accused.[53] If failure to disclose mandatory discovery results in substantial or significant prejudice to the accused, remedy may be granted by the Court.[54]
>
> In this case, the Commonwealth had seized, incident to arrest, the phone in question in December 2015. A subsequent search warrant was executed nearly seventeen (17) months later, not long prior to trial. As a result of this unreasonable delay, defense counsel was subjected to a substantial prejudice in not being able to properly and effectively prepare a defense for trial.

---

[16] To the extent Appellant asserts the actions taken by M.H. and Corporal Vilello established entrapment as a matter of law, we reject his assertion for reasons similar to those stated *supra*. **See Commonwealth v. Weiskerger**, 520 Pa. 305, 554 A.2d 10, 14 (1989) (noting to prevail on an entrapment defense as a matter of law the defendant must prove that the evidence of entrapment was so overwhelming that there could be no other conclusion).

[17] Although Appellant phrased this issue in his "Statement of Questions Involved" as relating to a sufficiency of the evidence claim, we conclude the issue pertains to an alleged discovery violation under Pa.R.Crim.P. 573.

> The phone was in the sole possession of the Commonwealth as evidence or contraband of an illegal activity, whereby access to all inculpatory and potentially exculpatory evidence was unfairly restricted from defense counsel. As a result, the strategy and preparation for trial was significantly hindered, preventing an effective and fully prepared defense.
>
> 53 Pa.R.Crim.P. 573(B)(1)(a).
> 54 **Hood**, 872 A.2d at 175.

Appellant's Brief at 31-32 (footnotes in original).

We conclude Appellant's undeveloped argument does not entitle him to relief. Appellant complains the Commonwealth's delay in executing a search warrant on his iPhone caused "substantial prejudice" in restricting counsel's ability to prepare for trial. However, Appellant has not proffered how his defense would have changed had counsel been provided with the contents of Appellant's iPhone sooner. Also, inasmuch as the parties stipulated at trial that Appellant sent all of the Facebook and text messages at issue, it is unclear as to how Appellant was "surprised" to learn of the content of the messages. Further, Appellant has not proffered that he asked for a continuance after the Commonwealth provided the information. Accordingly, we conclude Appellant is not entitled to relief on this claim.

In his sixth issue, Appellant contends the jury's verdict is against the weight of the evidence. Specifically, Appellant contends the jury erred in relying on M.H.'s testimony, which was incredible, fabricated, and motivated

to gain favor with the Commonwealth in an effort to reduce her boyfriend's unrelated prison sentence.[18]

When considering challenges to the weight of the evidence, we apply the following precepts. "The weight of the evidence is exclusively for the finder of fact, who is free to believe all, none[,] or some of the evidence and to determine the credibility of the witnesses." *Commonwealth v. Talbert*, 129 A.3d 536, 545 (Pa.Super. 2015) (quotation marks and quotation omitted). Resolving contradictory testimony and questions of credibility are matters for the finder of fact. *Commonwealth v. Hopkins*, 747 A.2d 910, 917 (Pa.Super. 2000). It is well-settled that we cannot substitute our judgment for that of the trier of fact. *Talbert*, *supra*.

Moreover, appellate review of a weight claim is a review of the trial court's exercise of discretion in denying the weight challenge raised in the post-sentence motion; this Court does not review the underlying question of whether the verdict is against the weight of the evidence. *See id.*

> Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

---

[18] Appellant adequately preserved his weight claim in his post-sentence motion. *See* Pa.R.Crim.P. 607(a).

*Id.* at 546 (quotation omitted). Furthermore, "[i]n order for a defendant to prevail on a challenge to the weight of the evidence, the evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the court." *Id.* (quotation marks and quotation omitted).

Appellant requests that we re-weigh the evidence and assess the credibility of a witness presented at trial, a task that is beyond our scope of review. The jury, as finder of fact, had the duty to determine the credibility of the testimony and evidence presented at trial. *See Commonwealth v. Collins*, 70 A.3d 1245, 1251 (Pa.Super. 2013) (stating that "[a]n appellate court cannot substitute its judgment for that of the finder of fact"). As the trial court relevantly indicated, while there were some inconsistencies in M.H.'s testimony, the jury was free to examine the inconsistencies and believe all, part, or none of her testimony. *See* Trial Court Opinion, filed 12/5/18, at 11-13. Moreover, the jury was informed that M.H. had a motive to lie and was free to determine what, if any, effect this had on her testimony. Further, much of M.H.'s testimony was supported by Facebook and text messages, which were extracted by the police and available in written form. Therefore, we conclude Appellant is not entitled to relief on this claim.

In his final claim, Appellant alleges the jury's verdict is against the weight of the evidence since there was no credible evidence suggesting that

Appellant had any intent or plan for sexual gratification with children.[19] **See** Appellant's Brief at 38. Appellant suggests the credible evidence reveals that he merely wanted to have sex with M.H. and he had no desire to have sexual activity with any child. He notes the jury's verdict regarding Appellant's intent or plan was based purely on unreliable circumstantial evidence. Finally, as to his trafficking conviction, Appellant notes the trial court was "hesitant" to send the charge to the jury for deliberation and such "hesitation" demonstrates that the jury's guilty verdict is against the weight of the evidence. **See id.** at 39.

As the trial court noted, Appellant's defense at trial was, in part, that the Facebook and text messages were indicative of Appellant "merely voicing a sexual fantasy." Trial Court Opinion, filed 12/5/18, at 15. However, the jury was free to weigh the testimony and evidence to determine whether Appellant had the requisite *mens rea* for the crimes. **See Collins**, **supra**. Further, it is well-settled that the Commonwealth may sustain its burden of proof by means of wholly circumstantial evidence, and the jury in passing upon the credibility of the circumstantial evidence, may believe all, part, or none of it. **See Commonwealth v. Arrington**, 624 Pa. 506, 86 A.3d 831 (2014).

With regard to Appellant's argument the trial court was "hesitant" to send the charge of trafficking to the jury, and this "hesitation" reveals the

---

[19] Appellant adequately preserved his weight claim. **See** Pa.R.Crim.P. 607(a).

jury's verdict is against the weight of the evidence, we note the following

relevant exchange occurred after the jury rendered its verdict:

> **[DEFENSE COUNSEL]:** I believe the weight of the evidence is against [a] jury's verdict regarding that one count [of trafficking], Your Honor.
>
> * * *
>
> I'm just making a motion, Your Honor.
>
> **THE COURT:** Okay. All right. I'm going to deny the motion. The more—I frankly, was a little bit surprised that there was not a demurrer on it. And I had kind of come to the same conclusion, I did, by going through this because I thought of all of these charges this would be the one that would be the subject to the possible demurrer.
>
> But I believe—I believe now that I've thought about it that both elements have certainly been the basis of the jury not going off the tracks in order to find him guilty of these two elements. So I'm going to deny the motion. Is there anything else?

N.T., 6/2/17, at 220, 224-25.

As the aforementioned demonstrates, while the trial court indicated that

it initially had reservations as to whether the Commonwealth sustained its

burden of proof as to the charge of trafficking, the trial court ultimately came

to the conclusion that the Commonwealth set forth sufficient evidence such

that a jury could reasonably conclude that Appellant was guilty of the crime.

Accordingly, the trial court denied Appellant's motion that the jury's verdict

was against the weight of the evidence. We find no abuse of discretion in the

trial court denying the motion, particularly since the evidence was not so

tenuous, vague, or uncertain that the verdict shocks the conscience of the

court. **_Talbert_**, **_supra_**. Consequently, we conclude Appellant is not entitled to relief on his final claim.

For all of the foregoing reasons, we affirm.

Affirmed.

Judge Bowes has joined the Memorandum.

Judge Nichols concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 07/16/2019